KURZ & HUTTENLOCHER ICE COMPANY and others, Appellants, vs. THE MILWAUKEE & NORTHERN RAILROAD COMPANY, Respondent.

*November 18, 1892 — January 31, 1893.*

*Railroads: Fire started by negligence: Court and jury; Combustible materials on track: Duty of railroad company, though a mere·licensee.*

1. Plaintiff's ice-houses were destroyed by a fire which started a few minutes after defendant's engine had passed along a side track near them. Defendant's evidence tended to show that the engine had the most approved appliances to prevent the escape of fire, that these appliances were all in good condition, the dampers properly closed, and the ash pan properly cleaned at the time, and that under such circumstances coals or cinders could not escape from the ash pan. There was no positive evidence of any defect in the engine and no evidence as to the size of the coal or spark that started the fire; but the evidence tended to show that the fire started between the rails of the track, and that a strong wind was blowing at the time. *Held,* that from this evidence it might be inferred that the fire was not started by a cinder from the smoke-

stack, which would probably have been blown to some distance from the track, but by cinders escaping from the ash pan, and that in fact the ash pan was not properly constructed or was out of repair or not properly cleaned or managed. It was error, therefore, for the trial court to rule that there was no evidence tending to show negligence of the defendant in that respect, and to take that question from the jury.

2. A railroad company which has constructed a track and is using it for its own gain and profit, is bound to use reasonable care to keep the same clear from inflammable material, although it had merely a license to lay such track and has no interest in the land over which it is laid.

APPEAL from the Circuit Court for *Milwaukee* County.

The action was brought to recover the value of plaintiff's ice-houses, ice, tools, etc., destroyed by fire May 17, 1890. In February, 1890, the plaintiff constructed the three ice-houses which were burned, upon rented land on the shores of Lake Winnebago, near the city of Menasha. The houses were all joined together, and at about the same time the Jefferson Ice Company built two ice-houses west of and adjoining the plaintiff's houses. In March, 1890, the defendant railroad company constructed a temporary side track along in front of the ice-houses, between them and the lake, and about ten feet distant from them, which side track connected with the main line of the Appleton branch of defendant's railroad. This side track was put in by the company simply by request of one Reed, the owner of the lands upon which both the ice-houses and track were situated, and the railroad company had no interest in the land on which the track was constructed, save such as might be obtained by such a mere license. The track was built to accommodate the owners of the ice-houses in shipping in materials and shipping out ice, and it was used for that purpose. The track was rudely built while the ground was frozen, and some of the pieces of boards and timber left on the ground from the building of the ice-houses were used in blocking up the ties. Prior to the burning of the ice-

houses, both the plaintiff and the Jefferson Ice Company had shipped in sawdust in cars, which was unloaded in front of their respective ice-houses, and part of which had been necessarily scattered about the track and between the track and the ice-houses. Both ice companies had also purchased hay, which was unloaded from wagons south of the track, and carried across the tracks on forks, so that a part of it was also scattered on the track and between the track and the houses. It was claimed on the trial by appellants that this *debris* had been cleaned up by the ice companies prior to the fire, but this evidence was contradicted by respondent's witnesses.

On the day of the fire a strong wind was blowing across the track towards the ice-houses, and the inflammable materials in and about the roadbed were dry. A switch engine was run down the side track past the plaintiff's house and in front of or a little beyond the Jefferson ice-house. Within a few minutes a fire started. There is much evidence tending to show that it started between the rails of the railroad track in front of the Jefferson ice-house, and it was rapidly carried by the wind to the Jefferson ice-house, and from there to the plaintiff's ice-houses, all of which were destroyed,— the apparent course of the fire corresponding with the direction of the wind.

The plaintiff claimed in its complaint that the fire was directly caused by the negligence of the defendant in the following respects: "(1) In the negligent manner of constructing its roadbed; (2) negligently leaving on its roadbed quantities of chips, rubbish, and other inflammable materials; (3) negligently operating and running its locomotive; (4) in not providing its locomotive with any proper and sufficient appliances for the prevention of the escape and spread of fire therefrom; (5) carelessly switching and bumping the locomotive into other cars owned by the company standing on the track. That by reason of such negli-

gence burning coals or cinders fell from the locomotive upon the combustible material placed and left upon the roadbed, setting the same on fire, which fire was communicated to adjoining property owned by the Jefferson Ice Company, and from thence communicated to the ice-houses of the plaintiff."

The defendant, by answer, alleged that the track was laid by virtue of a mere license, and at the request of and for the convenience of plaintiff, and that these facts, as well as the manner of its construction, were known to the plaintiff; that the inflammable material on the track was placed and left there by the plaintiff and by the Jefferson Ice Company, and not by defendant; and denied that it caused or set the fire.

Upon the trial the following special verdict was returned by the jury: " (1) Did Curtis Reed and wife, the owners of certain lands on Lake Winnebago, at Menasha, Wisconsin, through their son, W. W. Reed, on February 19, 1890, ask J. C. Spencer, vice-president of the *Milwaukee & Northern Railroad Company,* if said railroad company would lay a track on the land of said Curtis Reed and wife, to enable persons to ship ice therefrom, if they, the owners, could induce persons to put up ice thereon? *Answer.* Yes (by direction of court). (2) Did the defendant, through said Spencer, promise to lay a temporary track on the land of said Curtis Reed and wife in case parties should put up ice thereon, and, in case the business should become permanent, to lay a permanent track on a grade to be made by the owners of the land? *A.* Yes (by direction of court). (3) Was the track which was laid a temporary track, laid by the defendant upon the frozen ground, in pursuance of said arrangement between the owners of said land and said Spencer? *A.* Yes. (4) Did the plaintiff ice company, after the defendant promised to lay said temporary track, knowing that other ice companies were

putting up ice on said Reeds' land, make an arrangement with the said Reeds to occupy a portion of said land, and store ice thereon for shipment? *A.* Yes. (5) Was the property belonging to the *Kurz & Huttenlocher Ice Company* set on fire May 17, 1890, by a spark, cinder, or coal escaping from the engine of the defendant railroad company, which set on fire the adjoining ice-houses, the fire being communicated to *Kurz & Huttenlocher's* ice-houses? *A.* Yes. (6) Was the defendant, in the manner in which its roadbed was constructed, guilty of negligence which caused the destruction of the plaintiff's property? *A.* No. (7) If the court should finally be of the opinion that the plaintiffs should recover, at what amount do you assess their damages? *A.* $12,335.71."

Upon this verdict judgment was rendered for defendant, from which plaintiffs appeal.

For the appellants there was a brief by *Miller, Noyes & Miller,* and oral argument by *George H. Noyes.* They argued, among other things, that the season being very dry and the place conceded to be a dangerous one in which to operate an engine, it devolved upon the defendant to use the utmost vigilance and foresight to avoid the setting and spread of fire. *Moore v. C., M. & St. P. R. Co.* 78 Wis. 120–2; *Clune v. M. & N. R. Co.* 75 id. 532–6; *Grand Trunk R. Co. v. Richardson,* 91 U. S. 470; *Frankford & B. T. Co. v. P. & T. R. Co.* 54 Pa. St. 350; *Marvin v. C., M. & St. P. R. Co.* 79 Wis. 140, 144; *Beggs v. C., W. & M. R. Co.* 75 id. 444. If the smokestack and ash pans used by the defendant were so perfect when in order that sparks could not escape and coals of fire could not drop, then the fact that sparks escaped or coals of fire dropped afforded evidence of some weight that the engine which caused the fire was out of order or was improperly worked. The weight of the evidence is a question for the jury. *Pittsburg, C. & St. L. R. Co. v. Nelson,* 51 Ind. 150; *Dean v.*

Kurz & Huttenlocher Ice Co. and others vs. Milwaukee &.Northern R. Co.

*C., M. & St. P. R. Co.* 39 Minn. 414; *Mills v. C., M. & St. P. R. Co.* 76 Wis. 422; *Cantlon v. Eastern R. Co.* 45 Minn. 481; *Atchison, T. & S. F. R. Co. v. Campbell*, 16 Kan. 201; *Babcock v. C. & N. W. R. Co.* 62 Iowa, 593; *S. C.* 72 id. 197; *Johnson v. C. & N. W. R. Co.* 77 id. 666; *Webb v. R. W. & O. R. Co.* 49 N. Y. 420; *Hagan v. C. D. & C. G. T. J. R. Co.* 86 Mich. 615; *Greenfield v. C. & N. W. R. Co.* 83 Iowa, 270; *Slossen v. B., C. R. & N. R. Co.* 60 id. 215; *Cleveland v. G. T. R. Co.* 42 Vt. 449; *Brusberg v. M., L. S. & W. R. Co.* 55 Wis. 106. It was error for the court to refuse to submit to the jury the question of defendant's negligence in leaving combustible material upon the track, in which the fire originated. *Gibbons v. W. V. R. Co.* 58 Wis. 335; *S. C.* 66 id. 161; *O'Neill v. N. Y., O. & W. R. Co.* 115 N. Y. 584; *Grand Trunk R. Co. v. Richardson*, 91 U. S. 470; *Atkinson v. G. T. Co.* 60 Wis. 141; *S. C.* 69 id. 7; *Ill. C. R. Co. v. Kanouse*, 39 Ill. 272; *Gram v. N. P. R. Co.* 1 N. Dak. 252. The fact that the defendant does not own the right of way or the ground on which the track is laid, does not relieve it of liability. *Gram v. N. P. R. Co.* 1 N. Dak. 252; *Barre R. Co. v. Railroad Cos.* 61 Vt. 1–12; *Stetler v. C. & N. W. R. Co.* 46 Wis. 497; *S. C.* 49 id. 609; *Milwaukee & N. R. Co. v. Strange*, 63 Wis. 183; R. S. secs. 1802, 1831, 1831a. A railroad company must avail itself of the best methods and latest discoveries of science to prevent the escape of fire which it is reasonable to require it to adopt. *Fitts v. Cream City R. Co.* 59 Wis. 328; *Spaulding v. C. & N. W. R. Co.* 30 id. 110; *Pennsylvania Co. v. Roy*, 102 U. S. 451; *Shaw v. N. Y. & N. E. R. Co.* 150 Mass. 182.

For the respondent there was a brief by *C. H. Van Alstine*, and oral argument by *John T. Fish* and *Mr. Van Alstine*. They contended, *inter alia*, that a licensee must use the way in the condition in which he finds it. *Gallagher v. Humphrey*, 6 L. T. N. S. 684; *Vanderbeck v. Hendry*, 34

N. J. Law, 472. That which one consents to and invites, he cannot complain of in law as an injury. *Marquette, H. & O. R. Co. v. Spear*, 44 Mich. 169; 7 Am. & Eng. R. Cas. 486, 488.

The following opinion was filed December 6, 1892:

WINSLOW, J. The trial was long, and the exceptions taken were numerous. We shall review the case no further than is necessary to a discussion of certain questions fundamental to the case, upon which we think the conclusions of the trial court were erroneous.

I. The court refused to submit to the jury any question as to the alleged negligent construction, condition, or operation of the engine, and ruled that there was no evidence tending to show that there was any negligence on the part of the company in either respect. The evidence of defendant's employees was to the effect that the engine was provided with the most approved appliances to prevent the escape of fire; that these appliances were all in good condition, the dampers properly closed, and the ash pan properly cleaned, at the time the engine passed over the track; and there was no positive evidence of any defect in the engine or its appliances on the part of the plaintiff. Now, it is urged by the defendant, in support of the ruling of the trial court, that science has not yet succeeded in constructing devices that will absolutely prevent the escape of minute sparks from a locomotive at work, consequently that the mere fact that a fire was discovered soon after the engine passed (there being nothing to show the size of the spark or coal which caused it) is not sufficient to justify the jury in finding negligent construction, condition, or management of the engine, in the face of the great weight of affirmative testimony as to good condition and proper management, because the fire may have resulted from the

presence of one of the minute sparks which no appliance yet invented can arrest. In support of this argument, *Spaulding v. C. & N. W. R. Co.* 30 Wis. 110, is cited. The case, however, is not like the *Spaulding Case* in some of its essential features. In the case at bar the evidence tended to show that the fire originated from a spark or coal dropped from the ash pan. There was evidence from which the inference was strong that the fire started between the rails of the track. This was certainly a pretty satisfactory indication that the fire was not started by a cinder from the smokestack, because such a spark, with the strong wind which the evidence tends to show was blowing, would probably have been blown to some distance from the track. There was also considerable evidence on the part of the defendant's employees that coals or cinders could not escape from the ash pan if the pan was in proper condition, properly cleaned, and the dampers closed; some of the witnesses going so far as to say that the escape of coals or cinders from the ash pan, under such circumstances, was impossible. The situation, then, was this: There was evidence from which two conclusions might properly be drawn by the jury, notwithstanding the positive testimony of defendant's employees as to the condition of the engine: *First*, that the fire was started by cinders escaping from the ash pan; *second*, that no cinders or coal could escape from the ash pan, if properly constructed and in proper condition. If these two facts were found, then the fire must have arisen because the ash pan was either not properly constructed, or was out of repair, or not properly cleaned or managed, at the time of the passage of the engine over the track in question. These questions should certainly have been submitted to the jury. The case is identical in principle in this regard with the case of *Brusberg v. M., L. S. & W. R. Co.* 55 Wis. 106.

II. The plaintiff submitted certain questions which it desired should be made a part of the special verdict, but none of which were incorporated in the verdict by the court. These questions were: (1) Whether the fire originated in combustible material placed and left on the track by the defendant; (2) if not, did the defendant know that the combustible material in which the fire originated was upon the track a length of time prior to the fire reasonably sufficient to remove the same, and neglect to do so? Touching the alleged negligence of the defendant, the court submitted but one question, namely, whether, by reason of the original negligent construction of the roadbed, the fire was occasioned. The effect of this was to eliminate from the case all questions of negligence on the part of the defendant except in the one respect named in the question last referred to. There was certainly evidence in the case tending to show that there was a considerable amount of chips along the track in front of the ice-houses, which had been made in course of the construction of the railroad, and in blocking up the ties, and which had been allowed to remain there by the railroad company. There was also evidence tending to show that there was much hay and sawdust scattered along the track at the place where the fire originated, which had been dropped there by the Jefferson Ice Company in unloading cars and loads of hay, and which had been allowed to remain by the railroad company; and a jury might reasonably find that no fire would have started but for the presence of one or both of these classes of inflammable material upon the track. It seems evident that, if this *debris* had been upon a part of the permanent right of way of the company, the question whether the company had exercised reasonable care in keeping its right of way free from inflammable material would have been one for the jury. *Gibbons v. W. V. R. Co.* 66 Wis. 161. In this

case, however, it is insisted that because the railway company had only a naked license to lay its track, and had no interest in the land, it had no control over the premises covered by its rails and ties, and owed no duty to any one to remove combustible material. We have been referred to no case which lays down this principle, and, if there be any, we shall decline to follow it. In our opinion, the duty of the defendant company to take reasonable care of the track to prevent the starting of fires is not lifted from its shoulders by the fact that it did not own the right of way, but was simply a licensee. It built this track, and was using it for its own gain in the freights and tolls which it expected and was entitled to charge the ice companies. The track was rightfully laid. The company had a right to operate it and collect freights so long, at least, as its license was unrevoked. It would be strange to hold that the railroad company possessed all the substantial rights in the way of using the track and collecting its freights which it would have if it owned the right of way, with none of the duties or liabilities which ordinarily result from such use. Is there any good reason for so holding? We think not. Assuredly the license to lay its track and operate its engines and cars carried with it necessarily the right and duty to put and keep its tracks in such condition that the business could be done with safety to its employees and its patrons. With the right which it enjoyed and was exercising for its own gain and profit goes hand in hand a correlative duty to use reasonable care to keep its tracks clear from inflammable material. From these views it is clear that the court should have submitted in some appropriate form to the jury the question whether it negligently placed inflammable material upon its track, or negligently allowed such material to remain there, and whether, in either event, the fire in question originated in such inflammable material.

Some of the material issues in the action not having been passed upon, a new trial will be necessary.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

Upon a motion for a rehearing there was a brief for the respondent by *John T. Fish*, of counsel, and a brief for the appellants by *Miller, Noyes & Miller.*

The motion was denied January 31, 1893.