STACY and another, Appellants, vs. MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY, Respondent.
STACY and another, Respondents, vs. MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY, Appellant.

*February 27 — May 23, 1893.*

*Railroads: Fire started by locomotive: Negligence: Court and jury.*

1. In an action to recover for the destruction of a saw-mill, lumber piles, etc., by a fire alleged to have been set by defendant's locomotive which had been upon a side track near them shortly before the fire broke out, all the direct evidence as to the condition of the engine was to the effect that it was new and was properly constructed and equipped with all modern appliances to prevent the escape of fire, that it was carefully handled to prevent such escape, and that no coals were thrown out or cinders dumped at the place in question; but witnesses for plaintiff testified that, after the engine had passed and the fire had broken out, they found ashes, cinders, and coals in considerable quantity between the rails of the side track, and that the fire could be traced in the saw-dust from the track to the lumber pile in which it was first discovered. *Held*, that this testimony tended to show either that the engine was not carefully and properly handled, or that it was not properly constructed and equipped and in good condition; and that it was error to take from the jury the question as to defendants' negligence in respect to its construction and condition.

2. That question having been taken from the jury, they found in their special verdict that defendant was not guilty of negligence which caused the fire, and found also that plaintiffs were guilty of contributory negligence. Upon a motion for a new trial, the court

VOL. 85 — 15

below stated in a written opinion that the latter finding was clearly against the evidence but was rendered immaterial by the finding that defendant was not negligent. *Held*, that the finding of contributory negligence would not sustain a judgment for defendant.

APPEAL from the Circuit Court for *Winnebago* County.
This action was brought by the plaintiffs to recover against the defendant railway company the damages alleged to have been sustained by them May 13, 1887, by the destruction by fire of their lumber mill, piles of lumber, staves, and other personal property in and about the same, which was communicated thereto by and through the negligence of the defendant in and about the use and management of its locomotive engine and cars in and upon a certain side track upon which said mill and property was situated, in Birnamwood, a lumbering town in Shawano county, Wis. At this point the railway of the defendant runs nearly north and south, and in addition to the main track there are two side tracks, one on the east side of it and the other on the west side; the former used for the passage of meeting trains, and is the shorter of the two, the latter for shipment of timber, lumber, and other articles manufactured at the mills situated on and along it. The plaintiffs' mill, lumber, etc., was situated on the west side of the latter track, and stood with its end, twenty-two feet wide, towards the track, and forty feet distant; and a tramway was built out from the mill of that width, intersecting another tramway running north and south along the west side track for some distance, to take the lumber from the mill so it could be piled up in the yard in piles one to three rows deep, west of the north and south tramway, which was from five to seven feet from the ground. The piles of lumber were built up on sleepers laid on the ground below the tramway, and built up some distance above it. The tramway was but a few feet from the track, and served to facilitate the loading of lumber into the cars.

It was stated, in substance, in the complaint, that at the time in question the premises adjacent were covered with sawdust, shavings, and materials of a combustible nature, and that a large amount of lumber belonging to the plaintiffs and to others was piled close by and adjacent to said side track on either side of the mill, along which the defendant operated its cars and locomotives, and the east and west side tracks were each about eight or ten feet from the main track. There had been a period of two months' dry weather, and the materials on and along said west track and about the mill were in a very dry condition.

It was claimed on the part of the plaintiffs that a freight train (No. 12) drawn by locomotive No. 88, going south, arrived at 1:30 P. M. on the day in question at Birnamwood, and there met train No. 11, which went along on the main track without delay, and doing no business there on this occasion; that train No. 12, bound south, drawn by locomotive No. 88, took a loaded car from and left two empty ones at the main tramway of the plaintiffs' mill, and that in doing the necessary switching for that purpose said locomotive with one or more cars ran in on the west side track along said tramway, and by and through negligence and want of care kindled the fire in question; and negligence was charged in the managing and operating of the locomotive and cars, in the use of a locomotive not properly constructed and not in good repair; that the fire box, as well as the spark arrester, was opened and left open, so that coals and sparks of fire came out and were blown by the high wind then blowing in and upon the property of the plaintiffs and of others, and destroyed the same.

The defendant denied all the material allegations of the complaint, and the principal contention was whether locomotive No. 88 was in or upon the west side track on that day at all, and upon this question there was the conflicting testimony of numerous witnesses; the evidence on the part

of the plaintiffs being that this locomotive was in on said side track down to and in front of said main tramway in front of the mill twice in taking out one loaded car and leaving the two empty ones, while the evidence on the part of the defense was to the effect that said loaded car was taken out and the two empty ones were set in by and from the rear end of about one half of said train (the other half having been left on the main track), without this locomotive going in upon the side track at all, or nearer than about 500 feet to where the fire actually broke out, which was in the second lumber pile south of the mill and on and along the north and south tramway.

The evidence was that it was a very dry time and that that there was a strong wind blowing from the east, as plaintiffs' witnesses testified, and from the southeast or southeasterly direction as stated by defendant's witnesses; and on the part of the defendant considerable testimony was given tending to show that the fire was caused by sparks from a burning brush pile or a burning tree about —— rods southeast of where the fire broke out in the lumber pile above stated. The fire was discovered shortly after the train in question had proceeded south towards Kaukauna. Comstock, a witness on the part of the defendant, says he gave the alarm of fire; that when he first discovered it, it was in the sawdust, near the second pile of lumber south of the main tramway. The sawdust was burning right near the pile; the pile was on fire. "Mr. Nash came running to me from towards the mill, I think, after I gave the alarm. I was standing on the west side of the tramway. There was a space there between the tramway and the lumber pile of about two or three feet." Mr. Nash testified that when he arrived he saw, not a blaze, but could see fire in the sawdust; that he got down between the tramway and the piles, and found a blackened place outside of the front stick of the pile. There appeared to be

no fire on the side next to the tramway. "I put my foot under the stick where I saw the black coals or black refuse where the fire had burned it, and found there was live fire in the timber, and I kicked it forward into the center of the pile. While I was there doing that, I straightened up, and I saw the pile was afire back further into it. This was the blaze that I saw,— blazing back into the pile. Near where the fire commenced between the rails of the west track I saw a black mass of cinders, something resembling coals, that was smoking. The smoke was raising from them on the side of the track next to the tramway." Several other witnesses also testified to seeing such ashes, cinders, and coals between the rails near the pile which caught fire. One witness stated the fire looked as if it came from where the track was. "You could see it in the sawdust where it burned. The fire ran, the nearest you could get at it, from the railroad track, in the sawdust. I could see where it burned there and ran into the pile." Another witness testified to seeing cinders and coals there; that where he saw the coals was not far from being opposite the main tramway. Another witness testified to seeing the smoking cinders and ashes. The coals were only just a little ways from the fire that was burning in the lumber pile. Several other witnesses testified to the same effect. Another witness said: "There might have been half a bushel, a bushel, or two bushels of cinders and coals. They were close to the fire." The witnesses differed as to the quantity of coals, cinders, etc., and located them variously; some in front of or along the main tramway, and others near or opposite the lumber pile where the fire broke out. There was no evidence given on the question as to what precautions the plaintiffs had observed in respect to fire, or whether they had omitted any proper caution.

The defendant offered evidence by engineers to show that the engine was properly constructed and equipped;

that it was a new engine.  One witness testified that it was set up under his directions, and had all the modern appliances to prevent the escape of fire.  Another witness, having charge of wipers and inspecting ash pans, nettings, stacks, etc., testified that he saw this locomotive when it was set up; that he examined the appliances for the prevention of the escape of fire; that it was provided with all the appliances usually and ordinarily in use for that purpose; that it was set up at Kaukauna, and made its trial trip about a week before the fire occurred; and, in substance, testified the same as the other witnesses on that point.  The engineer in charge testified that it was perfectly constructed and had all the modern appliances.  As to the management of the engine, he testified that there were no cinders dumped from that locomotive on that day at Birnamwood, nor was the fire pan cleaned out; that he did not know of anything in the care and handling of the locomotive, so far as preventing the escape of fire, that could be done, that was not done; that there were no coals thrown out of the engine or cinders dumped that day at Birnamwood; and that it had a hopper, into which coals blown into the smokestack, too large to escape, fell, and were dumped from the bottom, being operated by the fireman by a lever on his side of the cab.  The testimony of the fireman was not produced.

The jury returned a special verdict, finding, among other things: " (1) Did locomotive engine No. 88, in charge of Engineer Verbryck, prior to the fire, and upon the 13th day of May, 1887, go upon the west side track as far north as the plaintiffs' tramway leading east from the mill, or thereabouts?  *Answer.* Yes.  (2) Was locomotive No. 88, on the 13th day of May, 1887, in good condition, properly constructed, and provided with all the usual appliances for the prevention of the escape of fire in use at the time of the fire?  *Answer by the Court.* Yes.  The plaintiffs ex-

cepted to its being thus answered. (3) Did the fire which started in the second lumber pile south of the main tramway originate from sparks or coals from locomotive No. 88? *A.* Yes. .(4) Was the defendant guilty of negligence which caused the fire? *A.* No. (5) Were the plaintiffs guilty of a want of ordinary care and prudence which contributed to the starting of the fire in said pile? *A.* Yes. (6) If you find that the fire in the lumber pile was caused by the negligence of the defendant, was it reasonable and natural to expect, under all the circumstances, that the fire caused by such coals or cinders from the locomotive (if it was so caused) would cause the destruction of the plaintiffs' said mill and property? *A.* Yes."

In respect to the second question, the court stated to the jury: "The undisputed evidence tending to show that the engine was properly constructed, under the rule of law it became the duty of the court to answer that question and not to submit it to you." The court also stated to the jury, at the request of the defendant: " It *appearing from the evidence* that it was properly constructed and provided with all the appliances usually in use to prevent the escape of fire, if the jury find from the evidence that the locomotive was properly handled and managed without negligence, even though the fire did escape from the said locomotive upon the west side track and communicate with refuse and combustible material which had been placed upon and along the same, the jury must answer that the defendant is not guilty of negligence." The question whether the plaintiffs were guilty of want of ordinary care and prudence which contributed to the starting of the fire appears to have been submitted with the assent of the plaintiffs, the court stating that "in considering this question you may take into consideration all the evidence in the case, the nature and kind of property of the plaintiffs situated near the railway track, the necessity and convenience of piling the same near such switch track of the defendant

Stacy and another vs. Milwaukee, Lake Shore & Western R. Co.

for the purpose of loading the same upon the cars of the defendant, the material that would naturally and necessarily accumulate and be scattered along and around the lumber piles and in and around the sawmill of plaintiffs while such lumber was being piled and such mill was being operated. And if you find that the plaintiffs in so piling their lumber used the care that an ordinarily prudent and careful man would have used under the circumstances, then you should answer that the plaintiffs were not guilty of a want of ordinary care and prudence which contributed to the starting of the fire in such lumber pile. Contributory negligence on the part of the plaintiffs is purely a matter of defense, and the burden of proof is on the defendant to show that the plaintiffs were guilty of negligence that contributed to the injury. And in arriving at a conclusion as to whether the locomotive was properly managed, you may take into consideration whether cinders or coals escaped from the locomotive upon the west side track, and, if cinders or coals did so escape, the quantity or amount of such cinders or coals so allowed or permitted to escape from the locomotive; and if cinders or coals did so escape from the locomotive and cause the fire, and the amount of cinders or coals so allowed to escape was unusual and unnecessary, then you may from such fact infer that the locomotive was not properly managed and not handled with ordinary care and prudence, and that the defendant was guilty of negligence." Further, that "there was no testimony which shows or tends to show that any *sparks* escaped from defendant's locomotive. The claim of the plaintiffs is not that sparks escaped, but that cinders or coals or hot ashes were permitted and allowed to escape from locomotive No. 88; and in determining what was the origin of the fire the jury are not to consider whether or not it might have originated from *sparks* which escaped from said locomotive." And, "that in determining the question whether or not the defendant company was guilty

of negligence the jury are limited to such acts of negligence, if any there were, on the part of the defendant, committed while its engine or train was upon the west side track, if it was there."

The plaintiffs moved for a new trial on the ground, among others, that the court erred in its charge to the jury, and that the verdict is against the weight of evidence, and that the findings upon the questions of fact were inconsistent. The court gave a written opinion on the motion, embraced in the bill of exceptions, in which it held that the finding that the plaintiffs were guilty of contributory negligence was clearly against the evidence, and that, had the jury answered that the defendant was guilty of negligence, the plaintiffs would have been clearly entitled to a new trial. But, having found that the defendant was not guilty of negligence, then it became wholly immaterial whether the plaintiffs were or were not guilty of contributory negligence. The opinion is embraced in the bill of exceptions, and concluded with an order denying the plaintiffs' motion for a new trial, and granting the defendant's motion for judgment. The plaintiffs appeal from a judgment in favor of the defendant. The defendant also appeals from so much of the judgment as limits its recovery of costs to the sum of $2,377.67, the court having sustained the disallowance by the clerk of certain items in the proposed bill of costs.

*Charles W. Felker*, attorney, and *Gabe Bouck*, of counsel, for the plaintiffs.

For the defendant there were briefs by *Alfred L. Cary*, attorney, and *Charles Barber* and *Bradley G. Schley*, of counsel, and oral argument by *Mr. Cary* and *Mr. Barber*.

The following opinion was filed March 21, 1893:

PINNEY, J. 1. The complaint in this case limits the charge of negligence against the defendant to what transpired

while its train on the day in question was on the .west side track, and hence the question whether train No. 12, engine No. 88, was in on that side track on that day was closely contested in a trial lasting over two weeks. The jury found that this train and engine went upon the west side track on that day "as far north as the plaintiffs' tramway leading east from the mill, or thereabouts," which was beyond the point where the fire broke out. They also found that the fire, which originated in the second lumber pile south of the main tramway, "originated from *sparks or coals* from locomotive No. 88," and that the defendant "was not guilty of negligence which caused the fire." Whether this locomotive was at the time in question in good condition, properly constructed with all the usual appliances for the prevention of the escape of fire, and whether it was properly handled and managed, were important matters bearing upon the question whether the defendant was guilty of negligence which caused the fire. The latter part of this proposition was submitted to the jury, and found, as we must assume, for the defendant; the former part — being the second question framed for special verdict — was taken from the jury by the court, and answered by it in the affirmative. Under the instructions of the court and the evidence, it is obvious that the jury based their finding as to the origin of the fire upon the evidence that, after the train had passed south and the fire had broken out, "cinders resembling coals or ashes," "ashes, cinders, and coals," "cinders and coals," or "coals in very considerable quantity, from half a bushel to a bushel or two bushels," as described by several witnesses, were found between the rails of the west side track over which the locomotive had passed, and that the fire could be traced from the track, in the sawdust, under the tramway and into the lumber pile from which it extended to the mill and lumber generally. This was evidence of a most important character,

strongly tending to show either that the locomotive was not carefully and properly managed, or that it was not properly constructed or in good repair and condition to prevent the escape of fire in such quantities. There was no evidence of any other fairly assignable cause for the escape of such a quantity of fiery matter upon the track from the locomotive. While it may be conceded that the court could not direct a verdict for the plaintiffs on such evidence, it is entirely plain that the evidence of negligence was such that it could not have properly directed a verdict for the defendant. But the court did, in effect, direct a verdict upon the question as to the construction, condition, and repair of the locomotive, by assuming that there was no evidence before the jury to rebut the presumption arising from the testimony of the defendant's witnesses upon that subject, and by taking the question from the jury, and directing an answer affirming that the locomotive was in good condition and properly equipped to prevent the escape of fire.

It is not material to inquire what the effect of the evidence produced by the defendant on this point would be if there was nothing in the case to rebut or contradict it. The question to be decided was one of negligence, and negligence, instead of being a fact in and of itself, is an inference from the facts and circumstances appearing in proof in each particular case. As each case depends so much upon its peculiar combination of facts and circumstances and the inferences to be drawn from them, a decision in it cannot be considered as a precedent, binding and controlling in other cases. "Negligence is always to be deduced as an inference from several facts and circumstances disclosed by the testimony after their connection and relation to the matter in issue have been traced and their weight considered. It is only when the inference of negligence or the absence of it from the undisputed facts is inevitable

that the court will direct a verdict." *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 496; *Hill v. Fond du Lac*, 56 Wis. 242; *Valin v. M. & N. R. Co.* 82 Wis. 1, 5, and cases there cited. The evidence referred to, tending to show that the fire originated from sparks or coals dropped from locomotive No. 88, and that sparks, cinders, or coals were found on the track soon after it had passed and the fire had broken out, and no other assignable reason appearing why they should be there, was of considerable probative weight to show that the locomotive was defective in structure and appliances, or out of repair, or that it was not properly and carefully handled and managed. As to the matter of structure of the locomotive, its repair and appliances to prevent fire, the case was improperly taken from the jury, and it cannot be distinguished in this respect from the cases of *Kurz & H. I Co. v. M. & N. R. Co.* 84 Wis. 171, and *Brusberg v. M., L. S. & W. R. Co.* 55 Wis. 106. It cannot be known what conclusion the jury would have arrived at in respect to the defendant's negligence had they been allowed to pass upon the entire case. This error the circuit court repeated and made emphatic by further instructing the jury that "it appearing from the evidence that it [the locomotive] was properly constructed and provided with all the appliances usually in use to prevent the escape of fire, if the jury find from the evidence that the locomotive was properly handled and managed without negligence, even though fire did escape from the said locomotive upon the west side track, and communicate with refuse and combustible material which had been placed on and along the same, the jury *must* answer that the defendant was not guilty of negligence." The court did instruct the jury that if cinders and coals escaped from the locomotive and caused the fire, and the amount of cinders or coals so allowed to escape was unusual or unnecessary, they might from such fact infer that the locomotive was not properly managed

or handled with ordinary care and prudence, and that the defendant was guilty of negligence. It is manifest that the case made by the evidence was in like manner open to an inference that the locomotive was not properly constructed and in good condition to prevent the escape of fire, and that therefore the defendant was guilty of negligence, and that the case ought to have been taken from the jury in that respect. The facts and circumstances in this case, adverted to, clearly distinguish it from the case of *Spaulding v. C. & N. W. R. Co.* 30 Wis. 110.

We cannot think that the suggestion of the circuit court in its decision on the motion for new trial, that "the jury may have found that the fire was caused by *sparks*, as they had a right to do under the question," is sustainable. There is really little or nothing in the case to justify such a theory, and it is in conflict with the answer to the third question, which includes *coals* as well as sparks. The third question and answer must, we think, be taken and understood in connection with the instructions of the court and the evidence as to cinders, ashes, coals, and the like having been found on the west side track soon after the train left it and when the fire had broken out, as being *descriptive* of what had so dropped from beneath the locomotive, and not of sparks which had escaped from the smokestack. The court, in view of the evidence, charged the jury that "the claim of the plaintiffs is not that *sparks* escaped, but that cinders or coals or hot ashes were permitted and allowed to escape from the locomotive; and in determining what was the origin of the fire the jury are not to consider whether or not it might have originated from *sparks* which escaped from the locomotive," and that "there was no testimony which shows or tends to show that any *sparks* escaped from the defendant's locomotive." The questions propounded for a special verdict are to be considered as the language of the court, and are presumed to be founded on

the evidence, and it is to be presumed that the jury followed these clear and positive directions of the court. Again, the jury were instructed not to consider any acts of negligence except those committed while the engine or train of defendant was upon the west side track; and with the high wind which prevailed at the time, if sparks escaped from the smokestack, it is clear that they would have been carried, before they would have fallen and kindled a fire, a considerable distance west of where the fire originated, and that, in order to have kindled it, they must have fallen directly to the ground by the side of the west side track,— a conclusion, under the circumstances, quite unreasonable. The instructions of the court upon this point were founded apparently upon the impossibility of constructing and managing a locomotive so that it would not at times emit small sparks, and with a view to distinguish the case of such sparks from the considerable mass of cinders, hot ashes, and coals, which the evidence tended to show had been found on the west side track. Unless the third question and answer are to be so construed, the finding on this material point is ambiguous and uncertain, and therefore insufficient. There was very much in the evidence and the very positive instructions of the court to show that the jury must have found that the fire was caused by the coals, cinders, and hot ashes mentioned by the witnesses, and nothing really to show that it was caused by sparks from the locomotive, as distinguished from the matters thus deposited on the track. If the question and answer and these instructions and the evidence, considered together, were not properly understood by the jury in the manner we have suggested, then the question and instructions must be held as confusing and misleading, and the instructions as erroneous.

The error of the court in taking the consideration of the second question from the jury and answering it, holding in

effect that the evidence of the defendant on that subject
was conclusive, and the giving of the further instruction in
relation thereto already noticed, tended to and manifestly
did prejudice the case of the plaintiffs in respect to the ques-
tion propounded by the fourth question to the jury,—
whether defendant was guilty of negligence which caused
the fire,— and may have controlled the action of the jury
in acquitting the defendant of the charge of negligence.

2. It is contended, however, that the judgment may not-
withstanding be supported by the fifth finding,— that the
plaintiffs were guilty of a want of ordinary care and pru-
dence which contributed to the starting of the fire in the
pile of lumber.   There was little evidence on this subject
beyond the statements in the complaint, referred to, and
the fact, which is of common knowledge, that the grounds
around this, as all other such mills, are to a considerable
extent covered · with sawdust, and some testimony that
edgings and debris to some extent had accumulated under
the tramway,— a necessary result, to some extent, in the
operation of any such mill.   There is nothing to show that
there was an unusual or dangerous condition of affairs in
these respects, or that the plaintiffs were guilty of any spe-
cific act or omission of a negligent character, or that they
failed to provide and keep means for the prompt extinguish-
ment of incipient fires.   The court states in its opinion,
which is the preamble to the order refusing a new trial and
directing judgment to be entered on the verdict, that the
finding of contributory negligence " is clearly against the
evidence.   Had the jury found that the defendant was
guilty of negligence, then the plaintiffs would have been
clearly entitled to a new trial."   The court had means of
forming a correct judgment on this question which are
denied to us, and, having listened to all the evidence and
observed· all that transpired on the trial, we must regard
its judgment on this point as controlling and as practically
setting aside this finding, even though it is said it became

immaterial as the jury found that the defendant was not guilty of any negligence. In *Doherty v. State*, 84 Wis. 152, we gave controlling effect to a like certificate of the circuit court as against the finding of the jury upon slender or apparently insufficient evidence.

We conclude, therefore, that the motion to set aside the verdict on this ground and for error in the instructions of the court, and in taking from the jury the second question and directing an answer thereto, should have been granted. This renders a reversal of the judgment of the circuit court necessary, and hence the appeal of the defendant from the taxation of costs fails, and it must be dismissed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial. The defendant's appeal from the taxation of costs is dismissed with costs.

A motion for a rehearing on the plaintiffs' appeal was denied May 23, 1893.