## BOYD v. PORTLAND ELECTRIC COMPANY.

[68 Pac. 810.]

ELECTRIC WIRES—INJURY—INSTRUCTION ON RES IPSA LOQUITUR.

1. In an action against an electric light company for injuries received from contact with a broken live wire, where the complaint alleged that the wire was weak and defective and improperly strung, an instruction that if it was proved that the accident was caused by the breaking of the wire the law presumed negligence, requiring defendant to show by preponderance of the evidence that it was not at fault, was not erroneous as permitting the jury to find negligence on grounds not charged, when the jury were told that plaintiff could only recover on the negligence alleged, and that the undisputed evidence of defendant raised the presumption that the wire was sufficient in size and quality, and that it would be necessary to find, in order to find for plaintiff, that the stringing of the wire was negligently done, or that it was negligently allowed to get out of its place.

PERSONAL INJURY FROM BROKEN WIRE—EVIDENCE OF NEGLIGENCE.

2. Sometimes a court will be justified in directing a verdict for defendant at the close of the testimony because it appears that there has been no negligence: but where the plaintiff's evidence tends by more than inference to show negligence, the case must go to the jury; thus, for example, where a person injured by contact with a broken live electric wire, charged that the wires were weak and improperly strung, and showed that in a wind of not unusual velocity a wire broke from its fastening and burned through another wire, the ends of which fell across a public street and injured plaintiff, there is more than an inference of negligence, there is affirmative evidence of an improper construction of the line, requiring the consideration of the jury.

INJURY BY ELECTRIC WIRE—INSTRUCTION.

3. In an action against an electric light company for injuries received from contact with a broken live wire an instruction that where the circumstances of the accident indicated that it might have been unavoidable notwithstanding reasonable and proper care, plaintiff, charging negligence, could not recover without showing that the defendant violated a duty imposed upon it from which the injury followed as a natural sequence, was properly refused, where there was any affirmative evidence of negligence.

Evidence of Contributory Negligence.

4. The evidence in this case was properly submitted to the jury to consider on both negligence and contributory negligence.

From Multnomah: Arthur L. Frazer, Judge.

This is an action against the Portland General Electric Co. for damages by a minor, through his father as guardian, predicated upon the same facts as *Boyd* v. *Portland Elec. Co.* reported in 40 Or. 126 (7 Am. Electl. Cas. 661, 66 Pac. 576), that being an action by the father on account of the same injury complained of here. The pleadings in the two cases differing somewhat, we will adopt the statement of the latter cause, with such modifications as are necessary to show the state of the pleadings in this. The defendant is a corporation engaged in supplying the City of Portland and its inhabitants with electric light, for which purpose it has put up poles along the streets, having cross arms near the top, upon which its wires are stretched. The day before the accident, and while a storm was prevailing, two of the wires on Magnolia Street became crossed at a point some 125 feet west of Dakota Street, and about 6 or 7 o'clock in the evening the smaller one burned in two, and hung down in two loops east of the break, one of them nearly reaching the ground two or three feet west of the pole at the intersection of the streets, where it swung directly over a path used by residents of the neighborhood. The other end remained suspended from the next pole, some 150 feet west, and did not reach the ground. About the time, or soon after, the wire parted, the boy who was subsequently injured, a lad about eleven years of age, and an elder brother, passed the pole west of Dakota Street, noticed the broken wire at that place, and knew it was dangerous, but did not know anything about the other wire hanging down east of that point at the intersection of the streets. About 8 o'clock next morning, the father, who resided on Dakota Street some 200 feet south of its junction with Magnolia, sent his son on an errand which required him to travel along the path near the light pole at the

corner of the street over which the wire was suspended. A few minutes later the boy was discovered lying on the ground, immediately under the broken wire, in an insensible condition, his right hand badly burned, while he was otherwise seriously, and perhaps permanently, injured. No one witnessed the accident, and the lad was unable to give any account of how it occurred, but says that he passed out of the front gate, and ran north along Dakota Street without looking up, after which he had no recollection of what occurred. It is admitted, however, that his injury was caused by contact with the broken wire.

After setting forth in his complaint that defendant had constructed and was maintaining an electric light system upon certain streets of the City of Protland, plaintiff charges defendant with negligence, in that one of its wires suspended along and across said streets was frail, weak, and otherwise defective, and when heavily charged with electricity was at all times unsafe and insufficient, and exceedingly so during the winds and storms often prevailing in that locality; that on the evening of December 6, 1897, said frail, weak, and defective wire broke, and in breaking swung over and against another wire, heavily charged with electricity, which defendant had carelessly and negligently strung and suspended near to and alongside of it, and said broken wire hung down close to the ground, and swung and was swayed by the wind over and across said street; that strong winds were prevailing at the time, and said weak and defective wire, long before it broke, plainly showed weakness and defects in general, and especially by flashes of electricity frequently emitted therefrom, all of which defendant, its agents and employes, could, by proper diligence, have known, and did know; that defendant, its agents and employes, could by proper diligence have known, and did know, very soon after said wire was broken, and long before the injuries complained of were received, that it was so broken and suspended in the street, but that they carelessly and negligently failed and neglected to remove or repair the same, or to give warning of the danger, and allowed it to hang down and against said live wire, heavily charged with elec-

tricity, and while in said condition to swing and be swayed by the wind over and across the street so near to the ground as to endanger the lives of persons traveling thereon.

The answer denies the negligence charged, and alleges that in the vicinity of the fracture the company had put in place wires for both arc and incandescent lights; that the arc light wires were much larger and carried a greater voltage than the incandescent wires; that they were strung about a foot apart; that the wires used were of the best and most improved quality, and such as are in general use for lighting purposes; that they were sound and in all respects properly insulated, and entirely sufficient for the use to which they were applied; that they were properly strung, fastened, and supported, and were in all respects as safe and secure as proper foresight would suggest, but by some means, and for some cause unknown to the defendant, one of the incandescent wires burned off and parted, and that a portion of it formed in loops and hung suspended from an arc wire within two or three feet of the ground, but not touching it; that the company was provided with the best approved appliances for detecting the grounding of its wires, but that, owing to the fact that no short current was formed, the fracture was not indicated.   Contributory negligence on the part of the plaintiff is also pleaded and relied upon as a defense.   The verdict and judgment being for plaintiff at the trial, defendant appeals.              AFFIRMED.

For appellant there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. John M. Gearin.*

For respondent there was a brief over the names of *Enoch B. Dufur* and *Frank Menefee,* with an oral argument by *Mr. Dufur.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

The plaintiff produced two witnesses, who testified that between 6 and 7 o'clock in the evening of the day before the accident occurred they saw flashes of light running along and coming from the wires between the poles where the fracture took place, and that it terminated in an electric explosion like a roman candle, emitting sparks in all directions, and with this the phenomenon ceased. Another witness saw flashes of light about 9 o'clock the same evening at the pole where one end of the wire hung suspended, being 150 feet distant from where the accident occurred. It was further shown that the wind was blowing during the evening, from 4 to 5 o'clock, at a velocity of 40 miles an hour; from 5 to 6, at 38 miles; from 6 to 7, 30 miles; from 7 to 8, 21 miles; and from 8 to 9, 29 miles,—which was not unusual or extraordinary. Further evidence was given showing the injury by contact with the suspended wire, and the condition in which it was found, and with this the plaintiff rested, and the defendant moved for a nonsuit, but without avail. It thereupon gave evidence tending to show that the wire that parted was purchased from a reputable manufacturer, was first-class in every particular, and suitable for the purpose for which it was used; that all the wires were securely fastened, and the manner of construction was such as was in common use and according to the most approved methods; that the company maintained at its operating station a ground detector of the most approved kind, kept strict watch, and consulted it at proper intervals, but was unable thereby to discover the fracture, and was not aware of it until a report came in between 9 and 10 o'clock the next morning, when immediate steps were taken to repair it. The trial court, after analyzing the complaint, and indicating the issues tendered by the answer and reply, further stated to the jury "that the whole case turned upon the question of negligence,—negligence on the part of the defendant as claimed by the plaintiff, and negligence on the part of the plaintiff as claimed and alleged by the defendant;" and after defining the

term "negligence," and the duties and responsibilities of the defendant, gave the following instruction, among others: "In cases of this kind, gentlemen of the jury, for reasons which I need not here discuss, the law provides that where it is shown that an accident of this kind has happened, and that the accident is caused by the breaking of a wire or by something going wrong in the business of a corporation engaged, as this one was, in supplying electric lights, and it is further shown that this wire which broke and which caused the accident was the property of and in the custody and control of the defendant, the law presumes then, or raises the presumption, that the defendant was negligent, and that the accident was caused by its negligence; and if there is no further testimony in the case, excepting the testimony to show the mere fact of the breaking excepting the testimony tending to show the mere fact of the breaking of the wire, that the injury resulted from that breaking, and that the wire belonged to this defendant and was within its custody and control, then it would be your duty to find for the plaintiff; and, when that is shown,—I should say, provided that there was no contributory negligence shown on the part of the plaintiff,—the burden is shifted to the defendant to show to your minds by a preponderance of evidence that it was not at fault, and that the accident happened without any negligence or want of ordinary care upon its part."

1. The defendant's initial contention, and the one most strenuously insisted upon, is that the plaintiff should have been confined in his proofs to the allegations of negligence contained in his complaint, and upon which he relied for recovery as thereby indicated, but that instead the instruction of the court just quoted set the matter at large with the jury, and permitted them to find upon grounds not set up in the complaint; that the doctrine *res ipsa loquitur* affords no proof in support of specific or particular declarations of negligent acts, such as is relied upon here for recovery, namely, that the wire was weak, or that it was improperly strung, or that defendant neglected to repair it, and that it only has application in a case where negligence is alleged in the most general terms.

It must be conceded at the outset that the plaintiff cannot recover for acts of negligence not counted upon in the complaint. The *allegata* and *probata* must correspond, and proofs cannot be permitted to extend to the establishment of any cause not counted upon, for if such were not the rule there would be many surprises during judicial investigations, followed by injustice and wrong. Furthermore, it is a recognized principle of law that he who alleges negligence must establish it, and that the mere proof that an accident has happened raises no presumption of negligence. *Res ipsa loquitur* is a maxim of evidentiary potency and consequence, and serves to imply or raise a presumption of negligence as a fact, when from the physical facts attending the accident or injury there is a reasonable probability that it would not have happened if the party having control, management, or supervision, or with whom rests the responsibility for the sound and safe condition of the thing, property, or appliance which is the immediate cause of the accident or injury, had exercised usual and proper care and precaution with reference to it. The most usual statement of the rule is that contained in an old case (*Scott* v. *London Dock Co.* 3 Hurl. & C. 596), namely: ''There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from the want of care.'' But, ''in such case, however,'' says the learned author of the American State Reports, in an admirable note to *Huey* v. *Gahlenbeck*, 121 Pa. 238 (6 Am. St. Rep. 790, 792, 15 Atl. 520), ''it is hardly accurate to say that negligence is presumed from the mere fact of the injury, but rather that it may be inferred from the facts and circumstances disclosed, in the absence of evidence showing that it occurred without the fault of the defendant. Such a case comes within the principle of *res ipsa loquitur;* the facts and circumstances speak for them-

selves, and, in the absence of explanation or disproof, give rise to the inference of negligence.'' The rule does not relieve the plaintiff from adducing any evidence within his power.

In *Bahr* v. *Lombard,* 53 N. J. Law, 233 (21 Atl. 190, 23 Atl. 167), a leading case upon the subject, it was held that, where the plaintiff's case shows that he has not produced material evidence clearly within his reach, the mere proof by him of the occurrence of the accident by which he was injured does not raise a presumption of negligence which the defendant can be called upon to rebut. The maxim or rule is, therefore, born of necessity, and entails the burden upon the defendant of showing due care when the facts are within his exclusive knowledge, so that the plaintiff cannot reasonably be expected to know or prove them. There must be something however, in the facts proven in each case, that speak of the negligence of the defendant; and the question to be propounded and solved in every such case is, do the proofs speak through inference and presumption of the negligent conduct of the defendant? These observations are supported by the uniform current of authority, and apply in all their significance to cases where the injury has been received from live wires suspended in public streets and thoroughfares, which are exclusively under the control and management of the defendant, whether natural persons or corporations: 1 Shear. & R. Neg. (5 ed.) §§ 59, 60; Keasbey, Elec. Wires, §§ 231, 233; 2 Jaggard, Tors, 938; *Esberg Cigar Co.* v. *Portland,* 34 Or. 282 (43 L. R. A. 435, 75 Am. St. Rep. 651, 55 Pac. 961); *Houston* v. *Brush,* 66 Vt. 331 (29 Atl. 380); *Mullen* v. *St. John,* 57 N. Y. 567 (15 Am. Rep. 530); *Seybolt* v. *New York, L. E. & W. R. Co.* 95 N. Y. 562 (47 Am. Rep. 75); *Western Union Tel. Co.* v. *State to Use,* 82 Md. 293 (6 Am. Electl. Cas. 210, 51 Am. St. Rep. 464, 31 L. R. A. 572, 33 Atl. 763); *Bahr* v. *Lombard,* 53 N. J. Law, 233 (21 Atl. 190, 23 Atl. 167); *Excelsior Elec. Co.* v. *Sweet,* 57 N. J. Law 224 (30 Atl. 553); *Newark Elec. L. & P. Co.* v. *Ruddy,* 62 N. J. Law, 505 (7 Am. Electl. Cas. 524, 41 Atl. 712); *Thomas* v. *Western Union Tel. Co.* 100 Mass. 156; *Cork* v. *Blossom,* 162 Mass. 330 (26 L. R. A.

256, 44 Am. St. Rep. 362, 38 N. E. 495) ; *Haynes* v. *Raleigh Gas Co.* 114 N. C. 203 (5 Am. Electl. Cas. 264, 26 L. R. A. 810, 41 Am. St. Rep. 786, 19 S. E. 344) ; *Trenton Pass. Ry. Co.* v. *Cooper,* 60 N. J. Law, 219 (7 Am. Electl. Cas. 444, 64 Am. St. Rep. 592, 38 L. R. A. 637, 37 Atl. 730) ; *Cummings* v. *National Furnace Co.* 60 Wis. 603 (18 N. W. 742, 20 N. W. 665) ; *Tuttle* v. *Chicago R. I. & P. R. Co.* 48 Iowa 236.

Now, the plaintiff might have alleged generally, as was the case in *Chaperon* v. *Portland Elec. Co.* 41 Or. 39 (8 Am. Elec. Cas. —— 67 Pac. 928), lately decided, that the defendant carelessly and negligently allowed one of its wires, heavily charged with electricity, to become broken and hang down upon the street, and by showing that it was so broken, suspended and charged with electricity, and the attendant circumstances of the injury so far as could be reasonably considered to be within his power, he could thereby have made it incumbent upon the defendant to disclose proper care, diligence, and precaution in all substantial details of construction and maintenance of the wires in place, and thus purge itself of the presumption of negligence arising from the facts disclosed by the plaintiff. But if the plaintiff chooses to narrow and circumscribe his cause of action, and specify and particularize the cause of the parting of the wires, and its consequent suspension upon the street, he thereby limits the inquiry to the cause designated, and none other is pertinent or can be entertained at the trial; but this does not destroy the utility or applicability of the maxim *res ipsa loquitur,* if the facts proven speak of the negligence charged. It might be much restricted and limited in its utility, but it will speak none the less within the scope of the allegations of the complaint. Two of these specifications, in effect, are that the company negligently provided a frail, weak, and otherwise defective wire, and that it was improperly strung. Now, the fact that it broke or became severed was a physical fact, which would be presumptive of negligence in supplying a weak and defective wire, and it would also imply negligence in the proper stringing of the wire, and thus call upon the defendant to explain in these particulars, but as to

none others outside of the scope of the pleadings. The fact that the pleadings are restrictive lessens the burden of the defendant, as it has notice of the particular matters of presumptive negligence, and as to this must explain, and thus rebut the inference. It follows that an instruction properly limited, touching and permitting the application of the doctrine of *res ipsa loquitur*, where the allegations are restrictive, does not set the matter at large, and permit the jury to find upon any ground of negligence they might surmise, and thus without proper notice of the cause relied upon for recovery mulct the defendant in damages. This we believe to be the doctrine of the cases, several of which are analyzed in *Boyd* v. *Portland Elec. Co.* 40 Or. 126 (7 Am. Electl. Cas. 661, 66 Pac. 576), and their applicability determined.

It is unnecessary to comment upon them further here, except that we believe *Snyder* v. *Wheeling Elec. Co.* 43 W. Va. 661 (7 Am. Electl. Cas. 473, 39 L. R. A. 499, 64 Am. St. Rep. 922, 28 S. E. 733), is so much in point that we will take the liberty, at the expense of brevity, of stating it more at large. The allegation there was that defendant negligently suffered one of its wires to be so insufficiently secured that it came down and lay in the street. Here the pleader particularized, and the court confined the proof to the allegation; yet, notwithstanding, it held the doctrine of *res ipsa loquitur* applicable. The following language of Mr. Justice BRANNON, who announced the opinion of the court, explains the holding: "It follows from the views above given that the court did not err in refusing to give defendant's instruction No. 2,—that the mere fact that Snyder was injured raised no presumption of negligence against the defendant. In an instruction in lieu of it the jury was told that the mere fact of the injury raised no presumption of negligence, unless the proof establishing the injury showed the circumstances from which some negligence or want of care may be attributed to the defendant. This was error against plaintiff, because it negatived the rule that the falling of the wire and injury afforded a *prima facie* case of negligence, and was beneficial to the defendant." In the case at bar the court

carefully restricted the application of the rule and doctrine to the allegations of the complaint. The jury were told, in effect, at the very outset, that the plaintiff must recover upon the negligence alleged, and, later, that the undisputed evidence of the defendant raised the presumption that the wire was sufficient in size and quality; thereby practically withdrawing this specification of negligence from their consideration. But that as to the stringing of the wire it would be necessary for them to find that it was either strung in a negligent manner in the first instance, or, after having been properly strung, it was negligently allowed to get out of position, and that defendant knew of it, or with reasonable diligence should have known of it. Thus were the jury restricted in their consideration of the presumption arising from the facts proved touching the negligence relied upon under the pleadings, and the instructions were as favorable to the defendant as it could ask.

2. Another contention is that the defendant's uncontradicted evidence clearly showed that it was not negligent in providing a suitable wire or in stringing it properly, and that the court should have directed a verdict accordingly. There are cases where the defendant's exoneration appears so palpably and unmistakably against the *prima facie* case of presumptive negligence as to warrant such a disposition of the cause. Of such are *Spaulding* v. *Chicago & N. W. Ry. Co.* 33 Wis. 582; *Menomonie Door Co.* v. *Milwaukee & N. R. Co.* 91 Wis. 447 (65 N. W. 176). But where the evidence of the plaintiff has affirmative significance in establishing negligence, and the negligence complained of is not left wholly to inference or presumption, the question becomes a matter for the jury, to be determined by the preponderance of evidence: *Kurz & Huttenlocher Ice Co.* v. *Milwaukee & N. R. Co.* 84 Wis. 171 (53 N. W. 850); *Stacy* v. *Milwaukee, L. S. & W. Ry. Co.* 85 Wis. 225 (54 N. W. 779). The plaintiff produced evidence tending to show that the wire which parted was blown against another, and that the contact probably caused the weaker one to burn and the ends to hang down. This had an affirmative tendency

to show the improper adjustment of the wire, and thus, under the authorities just noted, the question of negligence became a matter for the jury in connection with defendant's attempted exoneration. These observations, with those of Mr. Chief Justice BEAN, in *Boyd* v. *Portland Elec. Co.* 40 Or. 126 (7 Am. Electl. Cas. 661, 66 Pac. 576), are sufficient to dispose of the contention.

The court instructed as to what constituted an act of God, and it is claimed it was without the issues made by the pleadings. It was not altogether irrelevant, however, under the testimony, and being, as we deem it, a correct exposition of the law, no error was assignable in respect to it.

3. The following instruction was asked and refused, and error is assigned, to wit: "Where the circumstances of an accident indicate that it might have been unavoidable, notwithstanding reasonable and proper care, the plaintiff charging negligence cannot recover without showing that the defendant has violated a duty incumbent upon it, from which the injury followed as a natural sequence." The instruction was effective, if at all, to eliminate, by implication at least, the relevancy of the doctrine of *res ipsa loquitur*, previously applied by the court. It stands upon an inconsistent theory with that adopted by the court, and was properly refused.

4. The question of contributory negligence was for the jury. The plaintiff was a lad of about eleven years, who was sent on an errand by his father, upon the public street, where he had a right to be, and which he had a right to assume was unobstructed. While on his way his cap blew off in a wind, and, upon hastily replacing it, he ducked his head to keep the wind from his face, and, passing rapidly along, came in contact with the suspended wire. He had no previous knowledge of its presence, or no reason to believe it was there, except what inference may have been drawn from the fact that he saw a wire suspended at the further pole 150 feet distant the evening before. It was properly a matter for the jury to determine whether this was negligence in a boy of the age of plaintiff, and the instructions given sufficiently appraised the jury of

the duty of the plaintiff while in the exercise of his right to be upon the public streets.

This disposes of all the questions presented, and, being favorable to the respondent, the judgment will be affirmed.

AFFIRMED.