JANUARY TERM, 1886. 371

Dahl, Adm'r, etc. vs. Milwaukee City R. Co.

Dahl, Administrator, etc., Respondent, vs. Milwaukee City Railway Company, Appellant.

*February 6 — February 23, 1886.*

*(1) Practice: Special verdict: Inconsistent findings: Judgment. (2, 3) Street railways: Negligence: Killing of child: Contributory negligence: Court and jury: Duties of driver of street-car.*

1. If there is any evidence to support them, material findings cannot be stricken from a special verdict, and judgment rendered in opposition to them, merely because they are inconsistent with other findings.

2. A child between four and five years old was left in the care of a boy thirteen years old, but while his attention was diverted escaped from him and went upon the track of a street railway, where it was run over and killed by a passing car. Upon the evidence (stated in the opinion) it is held that the question of the negligence of the boy was properly submitted to the jury.

3. If a street railway company imposes upon its drivers other duties which materially interfere with their performance of the duty of keeping a constant watch of the track and of people approaching it, in order to prevent accidents, and if an injury results which would otherwise have been avoided, it is negligence on the part of the company.

APPEAL from the County Court of *Milwaukee* County. This is an action to recover damages for the death of the plaintiff's intestate (who was his child), alleged to have been caused by the negligence of the defendant company (which owns and operates a line of street railway in the city of Milwaukee), and of the driver of one of its teams and cars. On a former trial the county court ordered a compulsory nonsuit, and the judgment rendered pursuant thereto was reversed by this court on appeal. 62 Wis. 652. The cause has been again tried. The testimony on the two trials is substantially alike. A sufficient statement of it will be found in the report of the former appeal. On the last trial the jury returned a special verdict, in the usual form of

answers to interrogatories submitted to them. These are as follows:

"(1) Did the parents of the child exercise ordinary care and prudence in taking care of and preventing the child going onto the street upon which it was killed by the cars? Yes. (2) Was Peter Dahl, in whose care the child was left by its mother on the day of and prior to the accident, guilty of negligence in his care of the child? No. (3) Did Peter Dahl know or observe when the child escaped from his care when sitting upon the steps? No. (4) How long after the child escaped from his care was it before he discovered its absence? About one minute. (5) Was there any fence or barrier between the place where the child sat on the steps with her brother and the street or the railway track? No. (6) Was it a dangerous place for a child of that age to go unattended upon and across the street, with cars passing and repassing? Yes. (7) At what point in the street was the child hit by the car? Near the crossing. (8) Was the child hit while on or near the track on which the car was moving, by the whiffletree of the same? Yes. (9) Did the driver prior to the accident see the child running towards or near the track on which the car was running? If so, how long prior to the accident? Yes; and nearly at the same instant. (10) How far did the car run after the child was hit before it was stopped? About twenty feet. (11) Did the child run directly from the north side of the street towards the car on the south track, as it was coming east, and while it was in plain sight, and without stopping? Yes; diagonally. (12) Had the child on that day, unattended and alone, crossed the track prior to this accident? No evidence. (13) Did the child cross the north track, and run against the whiffletree or the horses on the north rail of the south track of the road? Yes. (14) Did the driver see the child until immediately before it was knocked or thrown down, and until after he turned to

make the change?  No.  (15) Was it a part of his duty as driver to give change to passengers in the car, and was he so engaged when the child ran up against the whiffletree and was thrown down?  Yes.  (16) How long a time elapsed between the time the child started to run towards the car and the time it was hit and thrown down?  About one minute.  (17) Did not the driver at once attempt to stop his horses and brake the car by all means in his power, to avoid the injury, as soon as he saw the child?  Yes; but from other duty and excitement not in time.  (18) Was the child instantly killed?  Almost instantly killed.  (19) Was the defendant guilty of negligence, or want of ordinary care, which caused the injury?  Yes.  (20) Do you find for the plaintiff or defendant?  Plaintiff.  (21) If you find for the plaintiff, at what sum do you assess the damages?  At $700."

The defendant moved the court to set aside the answers to the second and nineteenth questions on the grounds that they are unsupported by the evidence and are inconsistent with certain other findings, and for judgment.  The court denied the motion, and gave judgment for the plaintiff for the damages assessed by the jury.  The defendant appeals from the judgment.

For the appellant there was a brief by *Rogers & Mann*, attorneys, and *E. P. Smith*, of counsel, and oral argument by *Mr. Smith*.  They cited, as cases in which street railway companies were held not responsible for an injury to a child: *Hestonville, M. & F. P. R. Co. v. Kelly*, 11 Am. & Eng. R. Cas. 123; *Smith v. Passenger R. Co.* 13 Phila. 6; *Hearn v. St. Charles St. R. Co.* 34 La. Ann. 160; *Fallon v. C. P., N. & E. R. R. Co.* 6 Daly, 8; *S. C.* 64 N. Y. 13; *Citizens' St. R. Co. v. Cary*, 56 Ind. 396; *Maschek v. St. Louis R. Co.* 71 Mo. 276.

For the respondent there was a brief by *Austin, Runkel & Austin*, and oral argument by *Mr. R. N. Austin*.

LYON, J.. The defendant's motion for judgment is founded on the proposition that if the second and nineteenth findings are eliminated from the special verdict the remaining findings establish that the boy, Peter, in whose care the deceased child was left by their mother, was guilty of negligence which contributed directly to the death of the child, and that the defendant is not chargeable with any negligence in that behalf. If this is a correct proposition, and those two findings are rejected, it necessarily follows that the general verdict for the plaintiff will be overcome by the special verdict, and the defendant would be entitled to judgment. If those findings are retained as part of the special verdict, it is not maintained that judgment can properly be rendered for the defendant on such verdict.

The primary question is, therefore, Should the findings that the boy, Peter, was not negligent in the care of the deceased child, and that the negligence of the defendant caused the death of the child, be stricken from the verdict? It is very clear that this cannot properly be done merely because those findings are inconsistent with other findings contained in the verdict. Such inconsistency might be a ground for setting aside the whole verdict and awarding a new trial, but not for awarding judgment in opposition to those two findings, if there is any testimony in support of them. The two findings thus challenged are within the issues made by the pleadings, and are material in the case. We are aware of no ground upon which they can properly be rejected, unless they are unsupported by testimony. It was held on the former appeal, upon substantially the same testimony given on the last trial, that the questions of the negligence of the persons in charge of the deceased child, and of the defendant, were for the jury. While the testimony remains the same that ruling is *res adjudicata* in the case. It would have been error had the court rejected the findings upon those questions and given judgment for

the defendant. Had the court been dissatisfied with them, the remedy would have been to set aside the whole verdict and award a new trial. No such relief was asked for by the defendant.

On the former appeal the question of the alleged negligence of the boy, Peter, is not specially discussed in the opinion, but only that of the mother of the deceased and of the defendant; yet, as already stated, the effect of the judgment was to send that question also to the jury. Otherwise the nonsuit would have been sustained. But considering the question of Peter's alleged contributory negligence as a new one in the case, we think it was properly submitted to the jury on the testimony.

Premising that Peter and the child were sitting on the door sill of the front door of their home, the door being open; the findings of the jury which it is claimed conclusively show that Peter was negligent, are that there was no barrier between where the children were thus sitting and the street; that it was a dangerous street for the child to cross unattended; that the child escaped from where they were sitting without the knowledge of Peter, who did not discover her absence for about a minute; and that the child crossed the street, and was killed when returning.

The jury might also have found under the testimony, and presumably did so find in the general verdict for the plaintiff, that the child had never been allowed to go upon the street unattended, and was not accustomed to do so; that when she left Peter she went into the house (the most safe place for her), and escaped into the street through the back door into the yard, and through a gate opening into the street; and that Peter made prompt and intelligent search for her as soon as he discovered that she was missing.

If Peter is chargeable with negligence, it is because he did not keep his eye and thought constantly upon his sister when in his charge, but allowed his attention to be diverted

from her for a few moments, when she escaped from him. A jury might properly find that the exercise of such unceasing vigilance by Peter in the care of a child over four years of age, who had never shown any disposition to go unattended upon the street, would be extraordinary care,— a degree of care which the law does not require of any one as a condition precedent to a recovery for injuries caused by the negligence of another.

For the reasons above suggested, we think the question as to Peter's alleged negligence in the care of the child was properly submitted to the jury, and that the finding of the jury that he was not negligent in that behalf is not inconsistent with any other finding in the verdict.

As to the alleged inconsistency in the findings respecting the negligence of the defendant, a few remarks must suffice. If the facts found by the jury that the attention of defendant's driver was partially diverted while making change for a passenger just before the accident, and that he used his utmost exertions to stop the car as soon as he saw the child, conclusively establish the further fact that the driver was not negligent, of course the finding that the defendant's negligence caused the injury is inconsistent therewith. But those findings do not conclusively show that the driver was not negligent. The first and highest duty of the defendant to the public is to use all reasonable precautions to guard against just such accidents as this. To that end it should make it the imperative duty of its drivers, when the cars are moving, to keep constant watch of the track, and of people approaching it, for the purpose of avoiding collision. This is especially necessary to protect life and limb in densely populated portions of its route, where children of tender years, as well as adults, are liable to be upon the tracks. The company should not impose any other duty upon its drivers which will materially interfere with a proper performance by them of this primary

and indispensable obligation.   If it does, and injury results which otherwise would have been avoided, it is negligence of the company.    Hence, if the driver would have seen the child approaching the car in time to have stopped the car before she reached it, had he been looking along the track and watching against danger, it is no valid excuse for not looking in time that he was performing another duty to a passenger.   Neither is it enough that he did all he could to save the child after he saw her.   The jury were justified by the testimony in finding that he ought to have seen her before, and presumably they so found.

We conclude that the two challenged findings, as well as the general verdict for the plaintiff, are supported by the testimony, and that there is no inconsistency in the special findings.

*By the Court.*— The judgment of the county court is affirmed.