KENNEDY, Respondent, vs. LAKE SUPERIOR TERMINAL & TRANSFER COMPANY, Appellant.

*January 11 — January 30, 1894.*

*Railroads: Injury to switchman coupling cars: Contributory negligence.*

A switchman who was injured while attempting to make a coupling knew that his signals to slow up and to stop the train had not been obeyed and that it was moving at a dangerous rate of speed when within a few feet of the car to which it was to be coupled. *Held*, that in remaining between the cars to make the coupling he was guilty of contributory negligence which would prevent a recovery on account of any negligence of the engineer in moving the train too fast.

APPEAL from the Circuit Court for *Douglas* County.

Action to recover damages for personal injuries sustained by the plaintiff, a switchman in the employ of the defendant, while attempting to make a coupling. The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Butler & Vinje*, and oral argument by *L. S. Butler*. To the point that plaintiff was guilty of negligence, they cited *Lockwood v. C. & N. W. R. Co.* 55 Wis. 50; *Norfolk & W. R. Co. v. Cottrell*, 83 Va. 512, 31 Am. & Eng. R. Cas. 235; *Nichols v. C., R. I. & P. R. Co.* 69 Iowa, 156; *Deeds v. C., R. I. & P. R. Co.* 74 id. 154; *Dewey v. C. & N. W. R. Co.* 31 id. 373.

For the respondent there was a brief by *Ross, Dwyer & Hanitch*, and oral argument by *Louis Hanitch*.

ORTON, C. J. This action is brought by the plaintiff to recover damages for a personal injury caused by the negligence of the defendant company on the 22d day of December, 1891, at the city of Superior. The original complaint charged the defendant with negligence for having in use on its cars, adjacent to and on both sides of the drawbar, projecting blocks or double deadwoods,— an unusual attachment, and in the highest degree dangerous to life and limb of persons employed in coupling the cars; and, secondly, for suffering and allowing heaps of ashes and sticks of wood to lie close to the margin of the tracks of the road, and between the rails thereof, in the place where the plaintiff was coupling cars at the time of the injury. The complaint then charges that the plaintiff, while coupling said cars, struck his toe or foot against one of the heaps of ashes, and thereby was caused to stumble and fall at the same time the said cars came together, so that his left arm was then and there caught between said attach-

ments on said cars, and the hand and wrist thereof were then and there crushed and mangled, and it became necessary to cut them off.

In the amended complaint, after repeating the above charges of negligence, the negligence of the engineer of the train in operating said engine so as to push the car attached to the same at a dangerous rate of speed and with great force against the other car, is charged, for the first time, as another cause of the injury; but the manner and means of the injury are the same as in the original complaint,— that the plaintiff struck his toe or foot against one of the said *heaps of ashes*, and was caused to stumble and fall at the same time as the cars came together, so that his left arm was then and there caught between the said attachments or bumpers, and the hand and wrist thereof were crushed, etc. Then there is the general charge that the injury was caused by the negligence of the company in using said attachments, and by allowing the said heaps of ashes to so lie between the rails, and by the negligence of the engineer, as aforesaid.

It will be observed that, while these three causes of the injury are alleged, only one of them — *the heaps of ashes* — is shown to have caused it, and the manner in which it caused it. The complaint does not show, or attempt to show, how the other two causes produced the injury, or how they could have produced it, or how they combined with the "heaps of ashes" to produce it; whereas, it is particularly described how the heaps of ashes caused him to stumble and fall just as the cars came together, so that his left arm was caught and his hand and wrist crushed. This is a full and complete statement of the injury, and just how it was produced by this one cause. There is no room for any other cause. It is complete and exclusive in itself, and there is no other statement of it, or how, otherwise, it was or could have been produced. It will be seen

hereafter that the testimony of the plaintiff goes no fur-
ther than the complaint in this respect.

The evidence shows substantially that on the morning of
said '22d day of December, 1891, about 9 o'clock, the en-
gineer was backing one car or more, attached to the en-
gine, along and in a side or spur track in the city of Superior,
towards a single car standing near the end of said track
towards an open street, for the purpose of coupling onto
said single car and taking it away. The plaintiff, who was
foreman of the switching force and in the employment of
the company, standing near by, saw that there was no
brakeman near there to couple said cars when they came
together, and attempted to do this service in his place. He
first mounted the single car to set the brakes to keep it
from running off the end of the track when the cars came
together, but finding the brakes useless he came down and
blocked the wheels of the car. When the car attached to
the engine came within two or three car-lengths of the
other car, he stood opposite the opening between them,
and gave to the engineer a "car-length" signal. The en-
gineer did not seem to respond, and he then gave him the
signal to slow up, and he did not respond to that, and when
the moving car came within eleven or twelve feet of the
stationary car he gave him the signal to stop. The mov-
ing car was running three or four miles an hour, a danger-
ous rate of speed for coupling. He then went between the
cars, and saw that the link of the moving car was hanging
down, and he took it in his left hand, and walked along
with the car, facing the stationary car; and he testified
then as follows: "I commenced stumbling over these ashes,
and then my arm was caught between these double dead-
woods. This is the time I was hurt." The engineer had
not obeyed the signal to stop, and had not taken the slack
out of the cars. When asked by his counsel to describe
more minutely how the injury happened, the plaintiff tes-

tified: "Well, when I was in there, I went to make the coupling, of course, and I stumbled over these ashes, and with the speed of the train and everything, why, I got caught." When he took hold of the link, the cars were about ten feet apart. He took the link in his left hand, to guide it into the drawbar. He generally made the coupling with one hand alone. He testified on cross-examination as follows: "Well, the accident occurred in this way: I went in to make a coupling, and there was a lot of ashes piled up in there, and I stumbled over the ashes, and got caught,—unbalanced myself, and could not handle myself." He then said that the cars had got within three or four feet of each other when he took hold of the link, and the next thing was to make the coupling. When asked, "What did you do next?" he said: "Oh, I stumbled. I could not say whether I made the coupling or not." He then repeated: "I took hold of the link with my left hand. It was ashes I stumbled with. I know it was ashes, because I looked around. I don't presume I had hold of the link when I was caught."

The plaintiff did not state how or in what manner the speed of the train or the peculiar character of the bumpers on the cars caused or contributed to his injury, and it does not appear anywhere in the evidence. These two facts, as causes, do not seem to be connected in any manner with the plaintiff's injury. This should be proved or shown, or the jury could not find that they were, or one of them was, the proximate cause of the injury. It does not appear but that the plaintiff would have made the coupling and safely if he had not stumbled and fallen over the ash heap or lost his balance.

The court withdrew from the jury both the character of the bumpers and the fact of the ash heaps as causes of the injury, and submitted to them, as the only questions as to the cause, whether there was the want of ordinary care on

the part of the engineer in charge of the switch engine, and whether the want of ordinary care on his part was the proximate cause of the injury the plaintiff received; and the jury answered "Yes" to both questions. The jury found also that there was no want of ordinary care on the part of the plaintiff that contributed to produce the injury he received, and this was the whole of the plaintiff's case, besides the verdict for the damages to the plaintiff of $7,000.

The plaintiff testified that when he stumbled and fell over the ash heaps his arm was caught between one of the side bumpers and the drawbar. It does not appear clearly but that he would have so fallen and had his arm caught in that way if the speed of the engine had been only one mile per hour, instead of four. There was testimony tending to show that coupling is often done while the train is running four miles an hour. It would almost seem that the court submitted to the jury the negligence of running the train at too great a rate of speed as the only cause of the injury, when the proof of it was either entirely wanting or at least very doubtful, and withdrew the matter of the ash heaps the defendant had negligently allowed to remain on the track, which was clearly shown to have been the real, if not the only, cause of it. It is at least a very close question if there was any evidence to go to the jury on the issue which was submitted. But we have no right to reverse the judgment on this ground, if there was any evidence whatever to justify them in so finding, and there may be something in it not clearly apparent to us on this record of the testimony.

But the submission of the only question of negligence on account of the speed of the train, and of the engineer not slowing up or stopping the train in response to the plaintiff's signals, is necessarily accompanied by the very serious question of the plaintiff's contributory negligence, which

would not have been present had the jury found that the ash heaps on the track were the cause of the injury. When the plaintiff took hold of the link to make the coupling when the moving car was only ten or three feet from the other car, he knew that the engineer had not slowed up or stopped the train as he had signaled him to do, and he knew that the train was running at a dangerous rate of speed, and that it was dangerous for him to try to make the coupling until the train had slowed up or stopped; and he had the clearest reason to believe that it would not slow up or stop in time for him to make the coupling safely, in that the train was running at the rate of four miles an hour and was then so very near the other car and was just about to strike it. *Then* was the time for the plaintiff to drop the link and run out from between the cars. He did not do so, but attempted to make the coupling in the very face of immediate danger, and took his chances. Would an ordinarily prudent brakeman have attempted to do so? His conduct can be accounted for only in two ways. He was either grossly careless to the extent of recklessness, or he did not believe that there was any danger from the speed of the train; and he knew as well as any one whether there was any danger from it, and the theory of his case is that it was dangerous. The fact that the train had not stopped or even slackened its speed when so near the other car, was the very best evidence that it would not stop in time. But he went about his dangerous work when the train had not slackened its speed, and therein was the evidence of his want of common care and prudence. This was such a clear case of contributory negligence of the plaintiff on the facts that it was a question of law for the court, and the following instruction asked by the counsel of the defendant ought to have been given to the jury : " If plaintiff knew or believed that the engine and train were coming too fast for him to make the coupling in safety,

and he nevertheless did make, or undertake to make, the coupling, then his own negligence contributed to the injury, and he cannot recover in this action on account of any negligence of the engineer in moving his engine too fast." The court submitted this question to the jury very fairly in the instructions; but it seems that that was not sufficient for this case, and the jury found no negligence in such facts. It then became the duty of the court to set aside the verdict and grant a new trial in the case.

The case cited by the appellant's counsel of *Norfolk & W. R. Co. v. Cottrell*, 83 Va. 512, is so clearly in point that it would seem to be this case, with only a change of parties. The engineer was coming back at too great a rate of speed to make the coupling in safety, and when the cars were about a car-length apart the plaintiff gave the signal to slow up, or "steady up," and when they were about twelve feet apart he gave the signal to stop. The engineer did neither. When they came closer together at the same speed, the plaintiff stepped between the cars, and took hold of the link of the moving car with his left hand, and placed it in the drawhead of the standing car, and the train came together so violently that his hand was caught between the dead-blocks, and mashed. It was held that "the plaintiff was guilty of contributory negligence in attempting to make the coupling, knowing that his signals to slow up and to stop had not been obeyed and that the train was coming at too great a speed to do it safely." The court said: "It was negligence in the plaintiff to go between the cars to make the coupling while they were running at a dangerous rate of speed." The plaintiff, placing himself in a dangerous position, was negligent. *Lockwood v. C. & N. W. R. Co.* 55 Wis. 50; *Nichols v. C., R. I. & P. R. Co.* 69 Iowa, 156; and *Deeds v. C., R. I. & P. R. Co.* 74 Iowa, 154, are much in point. See, also, *Dewey v. C. & N. W. R. Co.* 31 Iowa, 373.

This is a case of clear and obvious contributory negligence of the plaintiff, by the plainest principles of law laid down in too many cases to be cited. The court should have given the above instruction, and, failing in that, should have set aside the verdict on the motion of the defendant. On this ground alone the judgment should be reversed and a new trial ordered.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.