Wis.]          AUGUST TERM, 1895.          447

Menominee River Sash & Door Co. vs. Milwaukee & Northern R. Co.

MENOMINEE RIVER SASH & DOOR COMPANY and others, Appellants, vs. MILWAUKEE & NORTHERN RAILROAD COMPANY, Respondent.

*November 8 — November 26, 1895.*

(1) *Special verdict: Setting aside findings: Judgment.* (2–9) *Railroads: Fires set by locomotive: Presumption of negligence: Special verdict: Inspection of engine: Evidence of other fires: Use of best devices to prevent escape of sparks.*

1. Findings in a special verdict which are contrary to the uncontradicted evidence may be set aside by the trial court and judgment given upon such evidence and the remaining findings; but if there was evidence in support of any material finding set aside a new trial should be granted.

2. Judicial notice may be taken of the fact that there is no device which will wholly prevent the escape of sparks and cinders from railway locomotives.

3. In an action for the destruction of property by a fire set by defendant's locomotive, the uncontradicted evidence — showing, among other things. that the engine was properly constructed and equipped to prevent the escape of fire; that it was carefully inspected by a competent person on the day before the fire, and also in the evening of the day on which the fire occurred, and on each occasion was found to be in good repair and in proper order; and that it was properly managed at the time of the fire — is *held,* as a matter of law, to have overcome any inference of negligence arising from the mere fact that sparks did escape and set the fire in question; and, in the absence of other evidence of negligence on the part of defendant, findings in a special verdict to the effect that the fire was caused by its negligence were properly set aside as contrary to the uncontradicted evidence.

4. A finding in the special verdict to the effect that the jury "did not know" whether the engine was properly managed when it passed the place where the fire started, was not equivalent to a finding that the engine was not properly managed,— especially where the jury, in answer to another question, found that defendant's negligence consisted of "careless inspection of netting" in such engine.

5. A locomotive engineer is presumably a competent person to inspect appliances on his engine to prevent the escape of fire.

6. Evidence of fires caused several months earlier by the same engine was incompetent where, after them and before the fire in question, the engine had been thoroughly overhauled and put in proper condition.

7. Evidence of fires caused by the same engine two or three months after the fire in question was incompetent.

8. Evidence of other fires caused by the same engine at or about the same time as the fire in question, with nothing to show that they were caused in a manner indicating a want of repair or improper management of the engine, or that they were other than the result of the unavoidable escape of small sparks or cinders, is *held* too uncertain to be of any value.

9. Where the evidence as to the relative merits of short front engines, like the one in question, and extension front engines, in respect to their ability to prevent the escape of fire, showed no decided superiority of one over the other, but that both kinds were of approved construction and in very general use, the railway company could not be held guilty of negligence in using one rather than the other.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

This action was brought to recover damages against the defendant for the negligent destruction by fire from one of its locomotives at Marinette, Wisconsin, on the 30th of September, 1891, of the lumber of the *Menominee River Sash & Door Company*, in its lumber yard adjoining the track of the defendant at that place, of the value of about $7,000. Three insurance companies, having policies on the property, under which they had paid losses, were joined as coplaintiffs, that they might have the benefit of any recovery that might be had. The answer, admitting the corporate character and business of the plaintiffs, was a general denial.

At the trial before a jury it appeared that the plaintiff the sash and door company had two lumber yards at Marinette, one of which was located about a block distant from its factory, between the main line of the defendant's road, called its "western yard," and its spur track to Minnekaunee, and east of their point of junction. There was an

alley on the east side of this yard from the spur track to the main line. At the southeast corner of the lumber yard the spur track was about three feet lower than the bottom of the most southeasterly pile of lumber. One of the piles of lumber was piled in part on the right of way, which was about fifteen feet wide, and on the premises of one Hollister. It was at this point the fire started. The lumber was piled in the usual way, the pile in which the fire originated being four or five feet high, and the next fifteen feet; the piles varying all the way over the yard from that height down.

The defendant's switch engine No. 2 came from Menominee on the main track about half past 3 o'clock on the afternoon of September 30th, and afterwards went down on the spur track. The wind was blowing from the south, and there was a rotten pine stump, two or three feet in diameter, about fifty-five feet north of the main track, and, shortly after the engine passed down upon the spur track, smoke was discovered coming from the stump, and it was found to be on fire. The switch engine returned from the spur track, and was backing down the main track, when the fire was discovered in the low pile of lumber at the point mentioned. There is an upgrade on the spur track of eight feet for a quarter of a mile from the east to the lumber yard, over which the engine runs quite fast.

Against the defendant's objection, evidence was given to show that fires had occurred previously along the track in the vicinity of the lumber yard in March, April, and May, and on the 5th, 9th, and 12th of the previous June, while this switch engine was running back and forth in the vicinity. The foreman of the sash and door company testified that he used to look out for fires all the time from the switch engine, because they had so many in that vicinity previous to the fire in question; that he had put out a good many of them; they were between the factory and the lime house east of it, and this engine was there switching when the fires were

discovered; that there were so many of them that he could not keep track of them.    Other evidence was given tending to show that other fires had been caused by switch engine No. 2 during the spring of 1891, and in the month of June, in the same vicinity where it did its work.  At the time of the fire, September 30th, the weather was very dry, and had been for a considerable time.

The plaintiffs put in evidence bulletins which had been posted in defendant's roundhouse at Menominee, where this engine was put up, issued by the superintendent of motive power for the company.    One dated February 10, 1891, was to the effect that a large amount of money had been paid out by the company during the last year on account of damages caused by fires by locomotives; that the testimony in numerous cases showed conclusively that such fires are the result of allowing the front end [of the engine] to fill up with cinders; that the fact that, if the front end becomes too full of cinders, sparks will be thrown, is familiar to all engineers; and that front ends must be cleaned out at proper intervals, to prevent throwing sparks; another, dated March 30, 1891, saying that "all engineers must see that their netting is examined at the end of each trip, and recorded in a book kept in the roundhouse for that purpose;" and another, dated September 24, 1891, to the effect that, "during the dry spells, engineers must pay particular attention not to allow front end of engine to fill on the road, and must stop and clean them out whenever there is a sufficient accumulation of cinders to cause the engine to throw sparks." Evidence was given tending to show that soon *after* the fire, for three successive days, the engineer had not examined the front end of switch engine No. 2, nor did any one, and that said engine threw sparks considerably in November and December after the fire; that, three or four weeks before the fire, clothes hanging on a line parallel to the switch track, and seventeen feet therefrom, had holes burned in

them by sparks from this engine. Evidence was also given tending to show the different manner in which single front engines and extension front engines are constructed and operated, and that both kinds of engines were in general use, and that all engines would at times throw small sparks or cinders from which fires might at times result; that some of the improvements in the single front engines to prevent fires are more modern than in the extension fronts.

On the part of the defendant, it was shown, by uncontradicted evidence, that switch engine No. 2 went into the company's shops for general repairs July 5, 1891, and left there for service August 2d thereafter, equipped with a baffle plate and usual devices for preventing the escape of sparks and cinders, and that the netting was new, all of which were fully described by an expert witness, who testified that his experience had brought him in contact with all styles of locomotives, equipped in all the ways in use, and that the devices so put in switch engine No. 2 were the most modern, tested, and approved devices in steam locomotives to prevent the escape of sparks; that he did not know of any device that would entirely prevent the escape of sparks through the smoke stack of a locomotive, and that he did not think it possible to use finer netting and still work the engine; that the effect of finer netting would be to shut off the draft. Other expert machinists testified that when the engine left the shop August 2, 1891, it was in good condition in every respect, and could not have been in better condition. It was shown that John Cleary, the engineer who ran this engine at the time of the fire, was a competent and careful engineer, and he testified as a witness that he, with Joseph Bush and John Mullandyke, inspected the netting in this engine September 29th, the day before the fire, and found it in good shape, and that on the evening of September 30th they found the front end, netting, and pan, and the engine generally, in good shape, and also on the 1st of

October; that on these occasions they did not find any defect or want of repair in the front end of the engine or the pan. He testified to the management of the engine, at the time it is claimed the fire was set, in the usual manner; that from September 24th to October 16th they inspected the netting every night when the engine came into the roundhouse, in the presence of two witnesses; that he looked her over, inside and outside, and found her all right; and that he knew of no engine that would not throw some sparks or cinders. The record of the inspection was produced in evidence, and Bush and Mullandyke both testified, corroborating Cleary as to inspection.

At the close of the evidence, the defendant asked the court to strike out all evidence in relation to fires claimed to have been set by said engine No. 2 prior to September 30, 1891, and, separately, to strike out all such evidence as to fires in April, May, June, and July, 1891, but these several requests were denied. The court, on like motion and without objection on the part of the plaintiffs, struck out all such evidence as to fires in July, after the 4th of that month, and also all evidence as to throwing of cinders by said engine in November and December, 1891.

The jury found a special verdict, in substance: (1) The fire in question started in the lumber yard of the *Menominee River Sash & Door Company*, about seventeen feet outside of the defendant's right of way, and about twenty-five feet from the center of the track. (2) The weather, at the time of the fire and for some time before, had been dry. (3) The defendant's switch engine, hauling one loaded and two empty freight cars, passed the place where the fire started shortly before it started. (4) The fire in question was set by the defendant's switch engine. (5) Said engine was properly constructed and equipped to prevent the escape of sparks and cinders. (6) Said engine was not in good condition when it passed the place where the fire started. (7) As to

whether said engine was properly managed when it passed the place where the fire started, the answer was, "Don't know." To the eighth question, "Was there any want of ordinary care on the part of the defendant which caused the fire which burned the lumber?" the jury answered in the affirmative; and to the ninth question, in substance, in what such want of care consisted, the jury answered, "Careless inspection of netting in engine No. 2." It was found, in substance, that the sash and door company had not been guilty of any want of care or negligence contributing to the injury, and that the value of the lumber destroyed was $4,000.

The plaintiffs moved for judgment on the verdict, and the defendant moved on the judge's minutes, pleadings, etc., among other things, to set aside the sixth, eighth, and ninth answers and findings of the verdict, as against the undisputed evidence in the case, and for judgment on the special verdict thus corrected and the undisputed evidence, on the ground that such evidence showed that the defendant was entitled to judgment. The court denied the plaintiff's motion, and entered an order setting aside the answers or findings in the special verdict to the sixth, seventh, eighth, and ninth questions, as being contrary to the uncontradicted evidence in the case, and that the defendant have judgment upon the uncontradicted evidence, dismissing the plaintiffs' complaint. Judgment was entered in favor of the defendant, pursuant to this order, from which the plaintiffs appealed.

*G. D. Van Dyke,* for the appellants, contended, *inter alia,* that if the court was right in its conclusion that the findings of the jury as to the condition and management of the engine at the time of the fire were contrary to the undisputed evidence, it could only direct a new trial and not judgment for the defendant. Sec. 2878, R. S.; *Annas v. M. & N. R. Co.* 67 Wis. 46, 60; *Fish Creek B. & L. D. Co. v. First Nat.*

*Bank,* 80 id. 630, 634; *Ohlweiler v. Lohmann,* 82 id. 198, 203; *Kennedy v. L. S. T. & T. Co.* 87 id. 28, 35; *Sheehy v. Duffy,* 89 id. 6, 12, 13; *Templeman v. Gibbs,* 25 S. W. Rep. 736; *German Ins. Co. v. Frederick,* 58 Fed. Rep. 144, 148. The evidence to rebut the presumption that the defendant was guilty of negligence in some respect causing the fire must be as broad as the presumption itself, and satisfactorily rebut every negligent act or omission which might, under the circumstances of the case, reasonably or naturally occasion the fire. *Spaulding v. C. & N. W. R. Co.* 30 Wis. 110, 121; *S. C.* 33 id. 582, 593; *Brusberg v. M., L. S. & W. R. Co.* 55 id. 106; *Karsen v. M. & St. P. R. Co.* 29 Minn. 12; *Nelson v. C., M. & St. P. R. Co.* 35 id. 170; *Johnson v. C., M. & St. P. R. Co.* 13 Am. & Eng. R. Cas. 460, 462; *Greenfield v. C. & N. W. R. Co.* 83 Iowa, 270; *Hockstedler v. D. & S. C. R. Co.* 88 id. 236; *Kurz & H. I. Co. v. M. & N. R. Co.* 84 Wis. 171; *Stacy v. M., L. S. & W. R. Co.* 85 id. 225. The finding of the jury that they did not know whether or not the engine was properly managed was equivalent to a finding that it was not so managed. The burden of rebutting the presumption of negligence was upon the defendant, and nothing short of an affirmative finding of want of negligence as to the management of the engine would suffice to overcome the presumption. *Sherman v. Menominee R. L. Co.* 77 Wis. 14, 21; *Flannery v. K. C., St. J. & C. B. R. Co.* 23 Mo. App. 120; *Turner v. K. C., St. J. & C. B. R. Co.* id. 12; *Atchison, T. & S. F. R. Co. v. McCandliss,* 33 Kan. 366. Any circumstance from which the inference might reasonably arise that the sparks or cinders would not have been thrown or the fire set, under the circumstances of its setting, if the engine was not out of repair or was not properly managed, are sufficient to make a *prima facie* case and, with the legal presumption, to justify a jury in finding negligence. *Brusberg v. M., L. S. & W. R. Co.* 55 Wis. 106; *Hoffman v. C., M. & St. P. R. Co.* 43 Minn. 334; *Huyett v. P. & R. R. Co.*

Menominee River Sash & Door Co. vs. Milwaukee & Northern R. Co.

23 Pa. St. 373; *Gerke v. Cal. S. N. Co.* 9 Cal. 251; *Greenfield v. C. & N. W. R. Co.* 83 Iowa, 270; *Missouri P. R. Co. v. T. & P. R. Co.* 41 Fed. Rep. 917, 918; *Lake Erie & W. R. Co. v. Helmerick,* 29 Ill. App. 270; *Hagan v. C., D. & C. G. T. J. R. Co.* 86 Mich. 615. The fact that the fire in the stump and in the lumber were set within an hour of each other, in the same locality, by the same engine, and under circumstances when an engine properly equipped and in good repair and properly managed would not have set such fires, is *prima facie* evidence that the engine was either out of repair or not properly managed. *Smith v. C., M. & St. P. R. Co.* 4 S. Dak. 71; *Field v. N. Y. C. R. Co.* 32 N. Y. 339; *Webb v. R., W. & O. R. Co.* 49 id. 420; *Mills v. C., M. & St. P. R. Co.* 76 Wis. 422, 427; *Gibbons v. Wis. V. R. Co.* 66 id. 161.

For the respondent there was a brief by *Greene & Vroman,* and oral argument by *Geo. G. Greene.* They argued, among other things, that courts know judicially that sparks and coals that will set fire escape from engines well constructed and managed and in good order. *Spaulding v. C. & N. W. R. Co.* 30 Wis. 123; *Abbot v. Gore,* 74 id. 513; *Reading & C. R. Co. v. Latshaw,* 93 Pa. St. 337; *Frace v. N. Y., L. E. & W. R. Co.* 143 N. Y. 182, 187; *Flinn v. N. Y. C. & H. R. R. Co.* 142 id. 11; *New York, C. & St. L. R. Co. v. Boltz,* 36 N. E. Rep. 414; *Louisville & N. R. Co. v. Reese,* 85 Ala. 497; *Smith v. N. P. R. Co.* 3 N. Dak. 17; *Jacksonville, T. & K. W. R. Co. v. Peninsular L., T. & M. Co.* 27 Fla. 1, 157; *Henderson v. P. & R. R. Co.* 144 Pa. St. 461; *Cronk v. C., M. & St. P. R. Co.* 3 S. Dak. 93; *McCaig v. Erie R. Co.* 8 Hun, 599. The presumption that where a fire is caused by a locomotive it is due to negligence on the part of the company is indulged in merely for the purpose of putting the company to proof and compelling it to explain and show, with a reasonable and fair degree of certainty, not by the highest and most clear and unmistakable kind of evidence,

that it has performed its duty. This presumption should be confined in its operation to the sole purpose for which it is raised. *Spaulding v. C. & N. W. R. Co.* 30 Wis. 123; *S. C.* 33 id. 591, 592; *Read v. Morse,* 34 id. 315; *Gibbons v. Wis. V. R. Co.* 62 id. 546; *Abbot v. Gore,* 74 id. 511; *Brusberg v. M., L. S. & W. R. Co.* 55 id. 106; *Kurz & H. I. Co. v. M. & N. R. Co.* 84 id. 171; *Stacy v. M., L. S. & W. R. Co.* 85 id. 225. In order that evidence of other fires may be admitted they must have occurred at or about the time of the fire in question, and under conditions proved that show or tend to show the bad condition of the engine. *Henderson v. P. & R. R. Co.* 144 Pa. St. 461; *Pennsylvania R. Co. v. Page,* 32 Am. & Eng. R. Cas. 386; *Collins v. N. Y. C. & H. R. R. Co.* 109 N. Y. 243; *Sheldon v. H. R. R. Co.* 14 id. 218; *Jacksonville, T. & K. W. R. Co. v. Peninsular L., T. & M. Co.* 27 Fla. 157; *Flinn v. N. Y. C. & H. R. R. Co.* 142 N. Y. 11; *McCaig v. Erie R. Co.* 8 Hun, 599; *New York, C. & St. L. R. Co. v. Boltz,* 36 N. E. Rep. 414; *Louisville & N. R. Co. v. Reese,* 85 Ala. 497; *Allard v. C. & N. W. R. Co.* 73 Wis. 165, 167; *Gibbons v. Wis. V. R. Co.* 58 id. 335. When a judgment is right on the undisputed competent proof, it will not be reversed on appeal because the verdict is against such proof, especially if the inconsistent part of the verdict has been set aside. The error or mistake of the jury in finding against the undisputed facts is *formal,* and may be corrected or disregarded. The better practice is to correct it by striking out the inconsistent findings and ordering judgment on the evidence, or substituting for such findings proper ones, so that the *record* will show, from the order in either case, a foundation of fact for the judgment, without any bill of exceptions; for, otherwise, until such bill, the judgment would have no support in the record. But when the record is made to show the undisputed competent facts by bill of exceptions, it would seem that an inconsistent uncorrected verdict should not be ground for

Menominee River Sash & Door Co. vs. Milwaukee & Northern R. Co.

reversal; for the record then shows the basis of fact for the judgment, and that the verdict is a mere error "in matter of form," as in the case of judgment *non obstante veredicto*. Be this as it may, this verdict was corrected in the court below by setting aside the findings against undisputed facts and granting judgment on the corrected verdict and such facts; and the decisions in this court agree that that was right. *Schweickhart v. Steuwe*, 75 Wis. 157, 161; *Mayhew v. Mather*, 82 id. 363; *Ohlweiler v. Lohmann*, id. 203; *Murphey v. Weil*, 89 id. 150; *Sheehy v. Duffy*, id. 6; *Fick v. Mulholland*, 48 id. 413.

PINNEY, J. 1. It is contended by the appellants' counsel that, if the findings set aside by the circuit court were contrary to the uncontradicted evidence, that court could not afterwards give judgment for the defendant upon the remaining findings and such uncontradicted evidence in favor of the defendant, but should have granted a new trial. It is proper to notice at the outset that the defendant's motion was not for judgment upon the record and verdict, *non obstante veredicto*, nor was such a judgment rendered or its legal equivalent, but it was a judgment on the part of the special verdict remaining and upon the uncontradicted evidence, such evidence having the effect of a special finding (*Murphey v. Weil*, 89 Wis. 150), and both, taken together, showing that the defendant was entitled to judgment in its favor, and was to the same effect, in the present case, as if it had been rendered upon a verdict directed by the court in favor of the defendant. If, upon the remaining findings and the uncontradicted evidence, the law was with the defendant, there certainly was no ground for a new trial, and the judgment given accordingly should be sustained. If, however, there was evidence in support of any material special finding set aside, the rule would be otherwise, and a new trial should have been granted, as in *Annas v. M. & N.*

*R. Co.* 67 Wis. 60, where it was held that the court, in view of the evidence upon the question of gross neglect, instead of amending the verdict and rendering judgment upon it, should have granted a new trial, the question of gross negligence being one for the jury. It is only where there is no evidence to support a material finding that it can be stricken from the record; but where it is against a decided preponderance of the evidence, upon setting it aside there should be a new trial. *Ohlweiler v. Lohmann,* 82 Wis. 198; *Dahl v. Milwaukee City R. Co.* 65 Wis. 371; *Schweickhart v. Stuewe,* 75 Wis. 157. In *Sheehy v. Duffy,* 89 Wis. 13, there was evidence in support of the finding of the jury, and therefore it was held that the finding could not be amended by the court, and a different one, in whole or in part, substituted in its stead. We have not been referred to any case which denies the right of the court to strike out findings contrary to the uncontradicted evidence, and to render judgment in conformity with such evidence. The cases of *Kennedy v. L. S. T. & T. Co.* 87 Wis. 35, and *Fish Creek B. & L. D. Co. v. First Nat. Bank,* 80 Wis. 630, 634, were cases where this court had held the findings in the court below wholly unsupported on material points; and upon reversal for that cause, the actions being legal, this court, according to the usual rule in such cases, awarded new trials, there being no proper finding upon the entire issues remaining upon which it could direct judgment, it being the proper duty of the trial court in such actions to perfect the findings upon the issues, and render judgment, when proper, upon or according to the uncontradicted evidence.

The true rule is as above indicated, that findings contrary to the uncontradicted evidence may be corrected in the trial court, and judgment given upon and according to the uncontradicted evidence; but, if there is a conflict of evidence upon any material point involved, a new trial will be necessary. The fact that the court, of its own motion, embraced

Menominee River Sash & Door Co. vs. Milwaukee & Northern R. Co.

the answer to the seventh question, if such it may be called, in its order setting aside part of the findings and directing judgment, was not an error prejudicial to the appellants, if the action of the court in giving judgment for the defendant was warranted by the uncontradicted evidence. Besides, the answer was merely to the effect that the jury " did.not know " whether the engine was properly managed when it passed the place where the fire was started. It was not equivalent to a finding of negligence in any proper sense, and it bore no relation to the only negligence found by the jury, namely, " careless inspection of netting in engine No. 2." The action of the circuit court in thus giving judgment was correct in point of practice.

2. The evidence produced on the part of the plaintiffs was sufficient to go to the jury, to show that the fire in question was set by the defendant's switch engine, presumably by sparks or cinders thrown and escaping from it; but it does not follow from this fact that the defendant is liable for the consequences that ensued. In order to charge it with the loss of the plaintiffs' lumber the fire must have been caused by the defendant's negligence. It is a well-understood fact — so much so that courts may properly take notice of it as a matter of common knowledge — that no means or device that human ingenuity has as yet been able to produce will wholly prevent the emission or throwing of sparks or cinders from railway locomotives. The evidence of experts on both sides establishes this fact. " Some fire under all circumstances, and under even the best condition of the engine to prevent it, will sometimes escape. The presumption, therefore, of negligence or the want of proper equipments, arising from the mere fact of fire having escaped, is not conclusive, nor, indeed, a very strong one, but, of the two, rather weak and unsatisfactory. It is indulged in merely for the purpose of putting the company to proof and compelling it to explain and show, with a reasonable and fair degree of certainty,

not by the highest and most clear and unmistakable kind of evidence, that it had performed its duty in this particular. Hence, evidence showing that the engines passing over a road were properly constructed and equipped, and were subjected to the vigilant and careful inspection of a competent and skilful person as often as once in two days, and found to be in proper order, would seem to satisfy the requirements of the rule." *Spaulding v. C. & N. W. R. Co.* 30 Wis. 122, 123. The effect of such proof, with proof of proper management, is to overcome any inference of negligence on the part of the defendant arising from the mere fact that sparks and cinders did escape and communicate fire, to the plaintiffs' injury. In the present case the precise manner in which the fire occurred was not observed by any one, but is wholly a matter of inference; and it is important to note that the case differs, in this respect, materially from the case of *Kurz & H. I. Co. v. M. & N. R. Co.* 84 Wis. 171, and *Stacy v. M., L. S. & W. R. Co.* 85 Wis. 225, where the evidence indicated that the fire in question was caused, not by sparks or cinders thrown from the engine, but by coal and cinders dropped on the track under circumstances tending to show that the engine was not properly constructed and in good condition, or negligence in the management of it, and thus furnishing affirmative proof of negligence which would require the submission of the case to the jury, to determine whether the evidence introduced by the company to overcome the presumption mentioned was, in all material respects, worthy of credit.    The cases of *Brusberg v. M., L. S. & W. R. Co.* 55 Wis. 106, and *Mills v. C., M. & St. P. R. Co.* 76 Wis. 422, turned upon similar grounds.    We think that, the evidence produced by the defendant in relation to the condition of the engine, its management, and the inspection of it remaining wholly uncontradicted, the case falls within the rule on which this court acted in *Spaulding v. C. & N. W. R. Co.* 33 Wis. 591, in a case quite in point, and that the circuit court

Menominee River Sash & Door Co. vs. Milwaukee & Northern R. Co.

properly held that such evidence should not be submitted to the jury. The weight and effect of such evidence, and the amount and character of proof necessary to overcome it, are questions for the court; but, in case of a conflict of testimony, the jury may determine what facts are proved. We do not understand that there is any conflict of evidence in relation to the facts upon which the defendant relies to rebut the inference of negligence arising from the mere fact that the fire was communicated from sparks and cinders escaping from the defendant's engine. The question was therefore wholly a question of law for the court whether the proof was sufficient for the purpose indicated. These views have been uniformly sustained in this state, and are in harmony with well-considered decisions elsewhere. Wood, Railroads, 1576–1581. It appears to us that the evidence, much of which has been set forth, was amply sufficient, within the rule, to rebut all inference of negligence on the part of the defendant, and that the burden of establishing such negligence on its part as would justify a verdict in their favor remaining on the plaintiffs, and no such evidence having been produced, judgment was properly given for the defendant.

It is urged that the circuit court erred in setting aside the answer to the seventh question in the special verdict, to the effect that the jury "did not know" whether the switch engine was properly managed when it passed the place where the fire started, and that the answer was equivalent to a finding that the engine was not properly managed when it set the fire. We are unable to understand how this can be maintained. Certainly, the jury have not affirmed that there was any such negligent management, and have confined their finding of negligence upon the part of the company wholly to "careless inspection of netting in engine No. 2." This contention is entirely unfounded. We are unable to see that there was any evidence which would have supported such a finding.

The finding in respect to careless inspection of netting is wholly unsupported by the evidence.    It appears that there was an inspection of the engine the evening after the fire,. and that it showed that the front end, netting, and pan, and the engine generally, were in good shape, and the evidence showed that it had been managed in the usual manner, and that it was in good condition when inspected the night before the fire.    The evidence of inspection is criticised, but it is clear and uncontradicted, and we think an engineer is presumably a competent person to make such inspections. The inspection on the evening of the 30th of September shows that any negligence of the defendant in not previously making proper inspection was not the proximate cause of the fire.    There was no evidence to show that the engine was coaled up while going over the upgrade approaching the lumber yard, and the fact that a fire occurred from sparks or cinders which might have unavoidably escaped from the engine affords no presumption on the subject; nor does it appear that the engine was running at an unusual or improper rate of speed, so as to afford ground for the belief that the fire was occasioned by negligent conduct in that respect. The evidence is that it was running in the usual manner, and tends to show that the dampers were properly managed.

The evidence of fires having been caused by the engine in April, May, and June previous was not proper for the consideration of the jury upon the question of negligence whether the engine was out of repair at the time of the fire September 30th, for, waiving the question of remoteness in point of time, it clearly appears that the conditions were entirely different; that the engine became out of repair to such an extent that it had to be taken to the repair shops July 4th, where it was thoroughly overhauled and repaired,. remaining until August 2d, when it left the shops in excellent condition.    Evidence that fires were caused during the time it was in the shops was stricken out.    The evidence

as to fires in November and December, after the fire of September 30th, was clearly incompetent, and was rightly stricken out. The evidence as to other fires in August and September is vague and too uncertain to be of any value. No witness identifies any one fire, giving any date, particular or approximate, within that period; and there was nothing to show, if any such occurred, that they were caused in a manner that indicated any want of repair or of proper. management of the engine, or that tended to contradict the evidence on the part of the defendant, or to show that they were other than the result of the escape of small sparks or cinders which could not have been entirely prevented in the case of any engine in good repair, well constructed, and properly managed; and these remarks apply as well to the contention that, previous to the fire on September 30th, fire was communicated by sparks from this engine to a rotten pine stump about fifty feet from the main line. There was no evidence to show in either case that the sparks were of unusual size, or that they were thrown to an unusual distance. *Allard v. C. & N. W. R. Co.* 73 Wis. 165; *Gibbons v. W. V. R. Co.* 58 Wis. 335; *Henderson v. P. & R. R. Co.* 144 Pa. St. 461; *Collins v. N. Y. C. & H. R. R. Co.* 109 N. Y. 243; *Flinn v. N. Y. C. & H. R. R. Co.* 142 N. Y. 11.

Considerable evidence was directed at the trial to the relative merits of short front engines, as the one in question, and extension front engines, in respect to their ability to prevent the escape of sparks and cinders. The evidence did not tend to show any decided superiority of one over the other, but that both kinds were of approved construction and in very general use, with others; and the court ruled that, unless it was a well-established fact that a certain plan or device was superior to all others, no company could be held negligent in not using that device, although the court or jury might be convinced that it was the best device, and that it could not be found that the defendant was guilty of

negligence in using a short instead of an extension front engine. As applied to the evidence, the ruling was clearly correct. *Frace v. N. Y., L. E. & W. R. Co.* 143 N. Y. 182, 187; *Flinn v. N. Y. C. & H. R. R. Co.* 142 N. Y. 11. But whether negligence would properly be imputable to a company under such circumstances becomes immaterial in view of the fact that in this case the jury found that the engine "was properly constructed and equipped to prevent the escape of sparks and cinders."

The court, for these reasons, properly directed judgment in favor of the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.

The presumption of negligence from railway fires is considered in a note to *Barnowski v. Helson* (89 Mich. 523) in 15 L. R. A. 33, 40.— REP.