### LAKE SHORE & MICHIGAN SOUTHERN RY. CO. v. GEORGE WAHLERS ET AL.

PROOF OF COMPLIANCE WITH SEC. 3365-1 REV. STAT., AS TO SPARK-ARRESTER ON LOCOMOTIVE, SUFFICIENT DEFENSE.

Where the evidence offered by the plaintiff in an action against a railway company, under Secs. 3365-5 and 3365-6 Rev. Stat., to recover for property destroyed by sparks from defendant's locomotive, tends to show that the fire was caused by sparks from such locomotive, though there is no direct evidence to that effect, evidence on the part of the defendant that it has complied with all the requirements of Sec. 3365-1 Rev. Stat., that such locomotive was properly equipped with a spark-arrester that would most effectually guard against the emission of fire and sparks, was in the hands of an experienced engineer and fireman, and was being run in a proper manner and without emitting any sparks, constitutes a good defense to such action.

## HAYNES, J.

The original action was brought by Wahlers against the Lake Shore & Michigan Southern Railway Company to recover the value of a load of hay that was burned, as is alleged, by sparks from a locomotive belonging to the railway company, at the time it was passing the farm of the Wahlers. The wagon loaded with hay was standing on the premises of the Wahlers adjacent to the railroad company's right of way.

Railway Co. v. Wahlers.

The suit was brought under Secs. 3365–5 and 3365–6 Rev. Stat., and also involves Sec. 3365–1 Rev. Stat. The plaintiffs below offered testimony tending to show that the fire caught from sparks from a locomotive, at least the facts were such that the jury might so infer, no other cause being apparent, although no one saw the sparks as they flew from the locomotive to the wagon.

The plaintiffs having shown this, the defendant moved the court to instruct the jury to return a verdict for the defendant, which the court properly overruled. The defendant then offered testimony tending to show that the locomotive which was in use on this occasion was fitted with a spark-arrester, and that it was in charge on the day in question of an engineer of very large experience, who had with him a fireman, who also had experience in firing locomotives. The testimony of these witnesses is that the engine was in good order on the day in question and that it was not emitting, so far as they could see, any sparks whatever, and that the train was running in the general manner, the fire having occurred in the day time, probably not far from twelve o'clock, noon.

The defendant also offered testimony showing that the locomotive had been inspected at the shops of the company very recently, more than once, and was inspected again immediately after the alleged burning of the wagon, and that on each of these occasions the locomotive was in good order and the spark-arrester was in perfect condition.

Counsel for the defendant, in examining his witnesses, usually put the question to them in regard to this spark-arrester, as to whether the locomotive was equipped with a spark-arrester, such as is usually or ordinarily used by railroad companies. We think in that respect he did not go far enough to comply with the requirements of Sec. 3365–1 Rev. Stat. The language of that statute is:

" Every railroad company operating a railroad or any portion of a railroad wholly or partly within the state of Ohio, shall place, or cause to be placed, on every locomotive engine used in operating such railroads, or constructing or repairing the same, some device or contrivance that will most effectually guard against the emission of fire and sparks which would otherwise be thrown out by engines, and such railroad companies shall keep such device or contrivance in good repair: Provided, that, such railroad companies shall not be required to use such devices during the months of December, January and February."

Now, notwithstanding other railroads used this device, it would not be complying with the statute unless he went further and showed, or offered evidence tending to show that it was the most effectual or would most effectually guard against the emission of sparks. The testimony, how-

even, passed along until a witness as put upon the stand by the name of McKenzie, who showed himself to be a competent expert, and in the cross-examination of this witness he stated that this spark-arrester that was used on this engine was equally as good as any other. He further stated, "I might explain that by saying there was some features in the extension front that we do not get in the diamond stack; we get a larger nozzle from our draft, bringing to the front end less sparks or cinders; the larger exhaust, the less energy we have on the fire. That was one of the features that was brought out in the experiment that was made." He was further asked, "The reason you adopted this was because that was the arrester that would do the business?" Answer, "Yes, sir.

We think that showed that the railroad company had complied with the statute in question.

No testimony was offered by the plaintiff in rebuttal, the plaintiff, relying upon the statute, Secs. 3365–5 and 3365–6 Rev. Stat., that he had made out a *prima facie* case, when he showed, or offered evidence tending to show that the fire was caused by a spark from the locomotive.

The rule of law governing this class of cases will be found in Baltimore & O. Ry. Co. v. Kreager, 61 Ohio St. 312 [56 N. E. Rep. 203]. I read from the second paragraph of the syllabus:

"2. A different rule of liability, and of evidence, is provided by the act, where the loss or damage is caused by fire originating on land adjacent to the land of the railroad company. In such cases the company is liable only when the fire was caused in whole, or in part, by sparks from an engine on or passing over the road; and the fact that the fire was so caused is made *prima facie* evidence of negligence on the part of the company or person operating the road. But this *prima facie* case of negligence may be overcome by proof, under a proper pleading, that the company exercised due care, the burden being on the company to show that it was free from negligence."

Now, in this case it is shown by the evidence that this locomotive was properly equipped with a spark-arrester of the best character and the one that was most effectual in guarding against the emission of fire; it is shown that the engine was in good order; that it was in the hands of an able and experienced engineer, and that his assistant was an experienced fireman; that the engine was being run in the usual and ordinary manner, and so far as the engineer in charge of the engine was concerned, without emitting any sparks or being in anywise out of order. The rule in regard to spark-arresters prescribed by the statute is more stringent than the rule that prevailed at common law; but when it is

Railway Co. v. Wahlers.

complied with, it is a good defense to an action as a rule of lesser force was at the common law.

We think in this case that the defendant has made by the evidence a good defense in the case, and that the jury erred in returning a verdict in favor of the plaintiff, and that the court of common pleas erred in overruling the motion for a new trial, so far as it was placed upon the ground that the verdict was not sustained by sufficient evidence or was against the weight of the evidence and the judgment was contrary to law. A very instructive case may be found in Menominee River S. & O. Co. v. Railway Co., 65 N. W. Rep. 176 [91 Wis. 447]; discussing the general law of the subject, and a further discussion of the question may be found, with an extensive citation of authorities, in 13 Am. & Eng. Enc. Law (2 ed.), 501-507.

For the errors alleged the judgment of the court of common pleas will be reversed, the verdict of the jury set aside and the case remanded for a new trial.